## Capuano v. Echo Bicycle Co.

*Martin D. Cohen,* for plaintiffs.

*Robert C. Brown, Jr.,* for defendants Almart Stores.

*Joseph F. Leeson,* for defendant Elwood Jones.

VAN ANTWERPEN, *J.,* May 14, 1982—This matter is before the court on the motion of defendant Almart Stores, Inc. to mold the verdict entered against defendant on February 3, 1982 to provide for contribution from additional defendants, Elwood Jones and Louis and June Capuano, and also to allow defendant Almart Stores to credit work loss benefits recoverable by plaintiffs under the No-fault Motor Vehicle Insurance Act towards the verdict.

Plaintiffs are the surviving parents of decedent Jeffrey S. Capuano, and administrators of his estate. Plaintiffs purchased a bicycle from defendant Almart Stores in December, 1976, and decedent was operating this bicycle on Pembroke Road, Bethlehem, Northampton County, Pa., on May 1, 1978 when he was struck by a motor vehicle operated by Elwood Jones. He died on May 10, 1978 as a result of injuries sustained in that accident.

Plaintiffs brought suit under the Pennsylvania Wrongful Death and Survival Statutes against Almart Stores, the seller of the bicycle involved, on a theory of strict liability in tort under §402A of the Restatement (Second) of Torts, alleging that the bicycle was defective as it was not equipped with a headlight and no warnings or instructions were provided to alert purchasers to the dangers of riding the bicycle at night without a headlight, nor were they informed that the reflectors on the bicycle were inadequate protection against the hazards of nighttime riding.

Almart joined Elwood Jones, the driver of the automobile which struck Jeffrey, as an additional defendant, alleging that he was negligent in the operation of his vehicle, and also joined Mr. and Mrs. Capuano as additional defendants, contending that they were negligent in allowing Jeffrey to ride the bicycle at night-time without a headlight.

At the conclusion of the trial, the jury returned a verdict against Almart on the §402A strict liability theory, and also found negligence on the part of the decedent, Jones, and the Capuanos. The negligence of each of the parties and the defect in the bicycle were all determined to be substantial factors in causing decedent's injuries. Damages were assessed at $100,000 for the wrongful death claim and $400,000 in the survival action. In the negligence action, the jury allocated the percentages of negligence as follows: decedent 30 percent; Capuanos 60 percent; and Jones 10 percent. Pursuant to Pa. R.C.P. 238, damages for delay were awarded in the amount of $88,212.50, and a verdict was entered in favor of the plaintiffs and against defendant Almart Stores in the amount of $488,212.50. Subsequently, Almart filed the motion to mold the verdict which is presently before the court.

It is clear that the trial court has the authority to entertain the defendant's motion. "The power of a trial judge to exercise his discretion in molding a verdict to fit the expressed desires of the jury is a corner stone of the jury system." Richards v. Dravo Corp., 249 Pa. Super. 47, 375 A.2d 750, 756 (1977); see also, Wadatz v. Taormina, 356 Pa. 481, 42 A.2d 220 (1947). Paramount Paper Products Co. v. Lynch, 182 Pa. Super. 504, 128 A.2d 157 (1956). Furthermore, the court's power in this regard is not limited to the time when the verdict is rendered and recorded but may be exercised after the jury is discharged so long as its intent is clear. Longberry v. Paul, 205 Pa. Super. 435, 211 A.2d 107 (1965); Emblem Oil Co. v. Taylor, 118 Pa. Super. 259, 179 A. 773 (1935).

The first question presented is whether under Pennsylvania law a defendant found liable to plaintiff on a strict liability theory is entitled to contribution from additional defendants who have been found negligent, particularly where a negligent defendant is a purchaser or user of the product which was determined to be defective. We have discovered no Pennsylvania appellate court authority resolving this issue; however, in light of the opinion of the Third Circuit Court of Appeal in Chamberlain v. Carborundum Co., 485 F.2d 31 (3d Cir. 1973) and the pronounced policy of this state's appellate courts in favor of contribution, see e.g., Puller v. Puller, 380 Pa. 219, 110 A.2d 175 (1955), we believe such contribution is appropriate in this case.[1]

Briefly, the facts of Chamberlain are that plaintiff's decedent was killed when an abrasive wheel on

1. We also note that to accept plaintiffs' argument would be to give absolutely no effect to the Uniform Contribution Among Tort-feasors Act.

a grinder he was using in the course of his employment shattered and a fragment pierced his abdomen. The administratrix sued the manufacturer under the Pennsylvania Wrongful Death and Survival Statutes on a strict liability theory. Decedent's employer was joined as an additional defendant by the manufacturer, which sought contribution from the employer as a joint-tortfeasor because of its failure to provide a guard on the grinding wheel. Both the manufacturer and the employer were found liable to plaintiff, on the strict liability and negligence theories respectively. The district court, applying Pennsylvania law, ruled that the strict liability defendant could recover contribution from the negligence defendant, even though the negligence defendant was also a purchaser of the product, and the Court of Appeals for the Third Circuit affirmed. We find the court's rationale in Chamberlain to be equally persuasive in the case at bar:

"[2] Carborundum and Berwind, however, are in pari delicto. If the grinding wheel had not left Carborundum's hands in a defective condition, despite the absence of a guard, the decedent would not have been injured. If Berwind had installed a guard, as the Pennsylvania regulations required despite the defective grinding wheel, the decedent would not have been injured. That in Carborundum's case the law imposes an absolute duty of care to manufacture a nondefective product, while in Berwind's case the law imposes only the standard of reasonable care seems to us quite irrelevant. Relevant is the conjunction of defective performance of both duties, which produced the accident.

The theory is that as between the two tort-feasors the contribution is not a recovery for the tort but the enforcement of an equitable duty to share liability for the wrong done. Puller v. Puller, 380 Pa. 219,

221, 110 A.2d 175, 177 (1955)." Chamberlain v. Carborundum Co., supra, at 34.

The relevant facts in the matter at hand are similar, including the existence of a statutory duty on the part of the plaintiffs to be certain that their son complied with the regulations of the Motor Vehicle Code pertaining to bicycles, which provide that bicycles shall not be operated at night without a headlight. Furthermore, the additional defendant in that case was also a purchaser of the product who would have been entitled to §402A protection. We also note decisions of the U.S. District Courts for the Middle and Western Districts of Pennsylvania which are consistent with the view that contribution should be permitted between negligent defendants and those strictly liable in tort. See, Rubright Co. v. International Harvester Co., 358 F.Supp. 1388 (W.D. Pa. 1973); Walters v. Hiab Hydraulics, Inc., 356 F.Supp. 1000 (M.D. Pa. 1973).

Also significant in this regard is the opinion of the Court of Common Pleas of Allegheny County in Stewart v. Uniroyal, Inc., (No. 2) 72 D.&.C.2d 206 (1975) which was affirmed by the Superior Court per curiam at 238 Pa. Super. 726, 356 A.2d 821. The court stated that contribution among defendants found strictly liable in tort and defendants determined to be negligent was appropriate as the defective product and the negligence of the other defendants concurrently caused the harm to plaintiff. Chamberlain v. Carborundum was cited with approval by the Stewart court and provided the supporting rationale for the decision.

We are aware that the United States District Court for the Western District of Pennsylvania has ruled differently on this issue; Rhoads v. Ford Motor Co., 374 F.Supp. 1317 (1974) affirmed on other grounds 514 F.2d 931 (3d Cir. 1975), however, as

we believe Rhoads and Chamberlain are virtually indistinguishable, we are compelled to choose between these two competing views. We find the approach taken by the Third Circuit Court of Appeals to be the more logical and believe we are bound to follow this approach, particularly in light of the lower court's opinion and the Superior Court affirmance in Stewart v. Uniroyal. See also, 79 Dickinson L.R. 125 (1974-75).

Finally, we reject plaintiffs' contention that no order for contribution can be entered at the present time. While it is clear that a money judgment for contribution cannot be entered until a party has actually paid more than his proportionate share of the verdict, Uniform Contribution Among Tort-feasors Act, 42 Pa. C.S.A. §8324(b), an order merely declaring that such a right exists is appropriate at this time. See Goodrich Amram 2d §2257:2; Anderson Pennsylvania Civil Practice §2257.11; 8A P.L.E. Contribution §16.

Having determined that a right of contribution exists in this case, the next question we must address is that of allocating the damages among the various parties. At the outset, it is clear that the Pennsylvania Comparative Negligence Statute, 42 Pa. C.S.A. §7102, does not apply with respect to a strict liability defendant. The act provides in pertinent part as follows:

"(a) General rule.—In all actions brought to recover damages for *negligence* resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be di-

minished in proportion to the amount of negligence attributed to the plaintiff." (Emphasis supplied.) 42 Pa. C.S.A. §7102(a).

Consideration of the rules of statutory construction as established by case law and the Pennsylvania Statutory Construction Act, 1 Pa. C.S.A. §1921 et seq., leads inexorably to the conclusion that the Comparative Negligence Act has no applicability in strict liability actions,[2]

When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S.A. §1921(b); see also, In Re: Private Detective License of Keibler Detective Agency, 279 Pa. Super. 276, 420 A.2d 1331 (1980); City of Pittsburgh v. Royston Service, Inc., 37 Pa. Commw. 394, 390 A.2d 896 (1978). Moreover, the language of such a statute must be construed according to common and approved usage. Comm. v. Hill, 481 Pa. 37, 391 A.2d 1303 (1978). With these standards in mind, it is apparent that the comparative negligence statute can play no role in determining defendant Almart's proportionate share of liability.

In addition, we note that, prior to the enactment of the Pennsylvania Comparative Negligence Statute, our appellate courts consistently rejected any attempt to apply principles of contributory or comparative negligence in strict liability cases. McCown v. International Harvester Co., 463 Pa. 13, 342 A.2d

---

2. Furthermore, this act was adopted in 1976, which is subsequent to the time §402A of the Restatement (second) of Torts was adopted by the Supreme Court of Pennsylvania in Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966). Therefore, it seems likely that, if the legislature intended the comparative negligence act to apply to a strict liability action, it would have said so.

381, 382 (1975); Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 337 A.2d 893 (1975). See also, 24 Villanova L.R. 453 (1979).

Defendant Almart urges that in the event the concept of comparative fault is not applied, the proper resolution of the apportionment issue is to hold each defendant responsible for a pro rata share of the verdict under the Uniform Contribution Among Tort-feasors Act, Act of July 9, 1976, P.L. 586, 42 Pa. C.S.A. §8321 et seq., that is, Almart, Jones and the Capuanos would each be liable for one-third of the total verdict.

While we agree that the Uniform Contribution Among Tort-feasors Act is an appropriate vehicle for apportioning the verdict between the negligence defendants and the strict liability defendant, we do not believe it can be properly applied to determine the respective liabilities of the negligence defendants *among themselves*. To do as Almart suggests would deprive the additional defendants of the benefit of the Comparative Negligence Act, which provides for apportionment of damages on a percentage of negligence basis "in *all* actions . . . for negligence" (Emphasis supplied) 42 Pa. C.S.A. §7102(b). We also note in this regard that the Pennsylvania Statutory Construction Act, 1 Pa. C.S.A. §1933, provides as follows:

"Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed if possible so that effect shall be given to both."

Although we are virtually without guidance from the appellate courts on this issue, we believe the Uniform Contribution Among Tort-feasors Act should be applied to determine the rights to contribution between the strict liability defendant and the

negligence defendants as a group, while the Comparative Negligence Act should control the rights of the negligent defendants inter se.

The Uniform Contribution Among Tort-feasors Act provides for contribution among joint tortfeasors on the basis of their pro rata share of the common liability, 42 Pa. C.S.A. §8324(b). In our view, the most logical application of this statute to the present situation is to treat the negligence defendants as one class of defendant, and the strict liability defendant as another class, with each class liable for its pro rata share of the verdict. Thus, Almart would be liable for one-half of the total verdict, and the negligence defendants together would be responsible for one-half of the verdict.

Apportionment of this one-half share of the verdict between the negligent defendants can then be made on the basis of the Comparative Negligence Act, 42 Pa. C.S.A. §7102(b), and the percentage of negligence attributed to each party in the jury verdict. Thus, Elwood Jones would be liable for ten percent of the one-half share of the verdict for which the negligence defendants are responsible, and sixty percent of this share would be the responsibility of the Capuanos.

This approach, in addition to allowing the application of comparative negligence principles to determine the liabilities of the negligent defendants, while avoiding their application in the strict liability case, also has the advantage of giving only the negligent defendants the benefit of a reduction in the verdict due to the decedent's negligence. It is clear under Pennsylvania law that strict liability defendants are not entitled to such a reduction. See, McCown v. International Harvester Co., supra. In addition, this system yields the least complicated re-

sult, and we believe it leads to the most workable rule.[3]

An additional issue raised in defendant Almart's brief is that of whether the entire verdict should be reduced by the amount of work loss benefits recoverable by plaintiffs from their insurance carrier under the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §1009.101 et seq., and whether the estate may "stack" work loss benefits to the extent of the number of automobiles insured under the relevant policy. After careful consideration of these issues, we conclude that a reduction in the verdict should be allowed, but only to the extent of the $15,000 in work loss benefits recoverable under 40 P.S. §202(b)(2), and that no "stacking" should be permitted.

While it is true that plaintiffs have not yet recovered work loss benefits from their insurance carrier, and that plaintiffs' entitlement to such benefits is currently being questioned by the carrier, we are convinced that a credit for work loss benefits is ap-

---

3. We have considered and rejected various other schemes such as that suggested by counsel for defendant Almart. This proposal would involve first a reduction in the verdict by $30,000 to account for no-fault benefits under two policies. Next, thirty percent of the verdict would be deducted as against Elwood Jones and Mr. and Mrs. Capuano. According to Almart's calculations, this would result in a common liability of all defendants of $320,748.75. Each defendant would be responsible for one-third of this amount, or $106,916.25. Next, 30 percent of the total verdict, or $137,463.75 (the amount attributable to decedent's negligence), would be added to Almart's share of the verdict. Finally, according to this theory, both Almart and the Capuanos would be entitled to a credit in the amount of one-third of the verdict due to the joint tortfeasors release of Elwood Jones. Under this scheme, Almart would be entitled to contribution if it paid in excess of $244,380.

propriate. In Troutman v. Tabb, 285 Pa. Super. 353, 427 A.2d 673 (1981), the Superior Court approved a reduction in an award for lost wages in a tort action in view of the $15,000 insurance reimbursement to which plaintiff was entitled under the No-fault Act. The Superior Court's language in Troutman clearly reveals that this reduction in the verdict was permissible even though work loss benefits had not yet been paid to the plaintiff by his insurance carrier. For example, in discussing the jury's failure to award damages, the court stated ". . . the jury may well have concluded that the $15,000 *to be paid* to him under the insurance coverage was adequate compensation." (Emphasis supplied) 427 A.2d at 677.

Also relevant in this regard is the opinion of the Court of Common Pleas of Lackawanna County in Vieira v. Rennie, 15 D.&C.3d 681 (1980), a case which is similar to this one in that it involved a wrongful death and survival action brought by the administrator of a minor decedent's estate. There, the court molded a verdict in favor of plaintiff by reducing the verdict in the amount of the work loss benefits recoverable from the insurance carrier under the No-fault Act. Following the rationale of Zagari v. Gralka, 264 Pa. Super. 239, 399 A.2d 755 (1979) and Heffner v. Allstate Insurance Co., 265 Pa. Super. 181, 401 A.2d 1160 (1979), affirmed 491 Pa. 447, 421 A.2d 629 (1980), the court reasoned that since Section 301(a) of the No-fault Insurance Act abolished tort actions for economic detriment, except when the economic loss figure exceeded the limits of Sections 202(a), (b), (c) and (d), the tort liability of third parties is abolished with respect to the portion of the damages attributable to the first $15,000 of work loss benefits and can only be recovered by plaintiff against the insurance carrier. 15

D.&C.3d at 685. We agree with this reasoning and accordingly hold that the verdict in favor of the plaintiffs must be reduced by the $15,000 in work loss benefits recoverable from the insurance carrier under the No-fault Act.[4]

We reject Almart's contention that it is entitled to an additional $15,000 credit for no-fault work loss benefits by virtue of the fact that plaintiffs had two automobiles insured under the policy in question, and that "stacking" of this coverage should be permitted, to allow plaintiffs to recover $30,000 in work loss benefits from the insurance carrier. Initially, we note that there are no Pennsylvania Appellate Court decisions which have permitted stacking of no-fault benefits, and the lower courts which have addressed this issue have reached inconsistent results. Compare, Wilson v. Keystone Insurance Co., Philadelphia County, Nov. Term 1979, term no. 3822 (May 7, 1981) and Heinsey v. Nationwide Insurance Co., 74 Berks Co. L.J. 87 (1981) (permitting "stacking" of benefits) with Pontius v. U.S.F & G, 102 Dauphin 432 (1981) (denying the right to stack no-fault benefits).

In light of the unsettled state of Pennsylvania law in this regard, we do not believe it is appropriate to allow a credit, premised on the right to stack no-fault benefits, towards a verdict in a tort action. Furthermore, we find the reasoning in the opinions denying the right to stack benefits to be more persuasive.

_____

4. The amount of the insurance reimbursement is to be deducted from the entire verdict rather than subtracting it from the verdict against the negligent defendants only, as the No-fault Act, 40 P.S. §1009.301(a), refers to partial abolition of *tort* liability, rather than abolition of liability for negligence. See also, Zagari v. Gralka, supra.

The decisions permitting stacking appear to rest primarily on an analogy to uninsured motorist coverage, where stacking of policies is permitted. Harleysville Mutual State Farm v. Williams, 481 Pa. 130, 392 A.2d 281 (1979). There are several important distinctions between uninsured motorist coverage and no-fault coverage, however. In the first place, as pointed out by the Dauphin County Court in Pontius, supra, the sole purpose of the uninsured motorists law is to provide protection for innocent victims of irresponsible drivers. While the No-fault Act shares this purpose of compensating injured individuals, it also emphasizes the need for a low cost insurance system, and is designed to provide such a system.

In addition, as the Supreme Court stressed in Harleysville v. Blumling, supra, there is nothing in the Uninsured Motorists Act, Act of August 14, 1963, P.L. 909, 40 P.S. §2000, which either explicitly or implicitly limits the total amount of recovery from an insurance carrier for injuries sustained as a result of an uninsured motorist's negligence. The No-fault Insurance Act, on the other hand, in Section 202(b)(2), sets a definite limit of $15,000 on the total amount of work loss benefits recoverable from the insurance carrier under the Act. For these reasons, we do not believe a credit based upon "stacking" of no-fault benefits should be allowed.

The final issue presented is that of the effect of a joint tortfeasors release executed by the Capuanos in favor of additional defendant Elwood Jones in exchange for his payment of $15,000 to plaintiffs. Defendant Almart contends that this release operates as a satisfaction of the portion of the verdict which represents Jones' pro rata share of the common liability, and that this pro rata share is one-third of the total verdict. According to Almart, this amount

must be subtracted from the verdict and cannot be recovered from any party. While we agree that there can be no recovery from anyone for any amount of liability attributable to Jones in excess of the $15,000 already paid, we can find no authority for the proposition that one-third of the verdict is not recoverable by virtue of the release.

The pertinent clause of the release reads as follows:

"In the event that other tort-feasors are responsible to us for damages as a result of this accident, the execution of this release shall operate as a satisfaction of our claim against such other parties to the extent of the relative pro rata share of common liability of the Payer herein released."

The effect of the release given to Jones is governed by the Uniform Contribution Among Tortfeasors Act, 42 Pa. C.S.A. §8326, which provides as follows:

"§8326. Effect of Release as to other tort-feasors

A release by the injured person of one joint tortfeasor whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid."

In our opinion, the effect of the joint tortfeasors release in the present case is simply to reduce the plaintiffs' total recovery by an amount equal to the percentage of the negligence defendants' share of the verdict which is attributable to Jones. The claim against the other parties is reduced by this amount, and plaintiffs may not recover from anyone that portion of the verdict which represents Jones' share of liability. See, Smith v. Fenner, 399 Pa. 633, 161

A.2d 150 (1960). For this court to do otherwise would be to abrogate the Comparative Negligence Act and invade the province of the jury.

It is also clear that as a result of the joint tortfeasors release, none of the other defendants may obtain contribution from Elwood Jones. 42 Pa. C.S.A. §8327; Smith v. Fenner, supra.

In summary, the verdict is to be molded as follows. First, the $15,000 credit for no-fault benefits is to be subtracted from the verdict of $488,212.50 to arrive at a total verdict of $473,212.50. The pro rata share of the verdict attributable to Almart under the Uniform Contribution Among Tort-feasors Act is $236,606.25 and the pro rata share of the verdict for which the negligence defendants as a class are responsible is also $236,606.25.

Next, the $236,606.25 share attributable to the negligence defendants must be apportioned among those defendants under the Comparative Negligence Act to reflect the percentages of fault allocated by the jury. Thus, the Capuanos are responsible for 60 percent of this amount, or $141,963.75. Elwood Jones would be liable for ten percent of this sum, or $23,660.62, but for the joint tortfeasors release which has the effect of satisfying the entire claim against him. The remaining 30 percent, or $70,981.88, represents the percentage of negligence assigned by the jury to plaintiffs' decedent, and therefore may not be recovered by the plaintiffs.

Wherefore, we enter the following

## ORDER OF COURT

And now, this May 14, 1982, the verdict is molded as follows. The verdict is entered in favor of plaintiffs and against defendant Almart Stores, Inc., and additional defendants Elwood Jones and Louis F.

and June Capuano in the amount of $473,212.50 to reflect a credit for no-fault insurance benefits. The claim against Elwood Jones is deemed satisfied by virtue of the joint tortfeasors release executed by the plaintiffs, and no party is entitled to receive contribution from him. Defendant Almart Stores, Inc. will be entitled to contribution from additional defendants Louis F. and June Capuano if it pays more than $236,606.25 to plaintiffs.