Anthony Lyngarkos, Appellant v. Commonwealth of Pennsylvania, Department of Transportation, et al., Appellees.

Argued November 20, 1980, before Judges MENCER, ROGERS and PALLADINO, sitting as a panel of three.

*Michael T. Joyce, Orton, Nygaard & Dunlavey, Inc.,* for appellant.

*William C. Sennett, Knox, Graham, McLaughlin, Gornall and Sennett, Inc.,* with him *Ritchie T. Marsh, Spaeder & Schaaf,* for appellee, Mackay-Swift, Inc.

*J. Lawson Johnston,* Deputy Attorney General, with him *Brian H. Baxter,* Deputy Attorney General, for appellee, Department of Transportation.

*William George,* appellee, for himself.

OPINION BY JUDGE ROGERS, February 26, 1981:

Anthony Lyngarkos has appealed from an order of the Court of Common Pleas of Erie County sustaining Mackay-Swift, Inc's (Mackay), a motor vehicle dealership, demurrer to a count of the appellant's complaint in trespass seeking damages from Mackay for the latter's issuance of a temporary motor vehicle registration card and plate without proof that the buyer had insurance.

Lyngarkos alleges that he is a citizen and resident of Pennsylvania; that Mackay is a new and used car sales corporation with its principal place of business in North East, Pennsylvania; that William George is a citizen and resident of New York; that on or about December 17, 1977, Mackay sold a 1971 Jeep to George and issued a Pennsylvania temporary registration card and plate for the Jeep; that Mackay issued the temporary registration plate as an agent for the Pennsylvania Department of Transportation; that at the time Mackay issued the temporary registration plate to George, George did not possess No-fault insurance coverage;[1] that on December 29, 1977, Lyngarkos was a passenger in the Jeep, being driven by Thomas Gratto in New York with the permission of George and that Gratto caused the car to leave the road resulting in an accident in which Lyngarkos suffered serious injuries; that as a result of the accident, Lyngarkos has incurred medical expenses in excess of $12,000.00 and has suffered a loss of earnings and an impairment of his earning capacity; and that, at the time of the accident, Lyngarkos did not operate or own a motor vehicle and did not live in a household in which an insured individual resided and therefore did not qualify

---

[1] *See* the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, §101 *et seq.*, 40 P.S. §1009.101 *et seq.*, (No-fault Act).

for coverage under the No-fault law of Pennsylvania or New York.

In the count directed to Mackay, Lyngarkos avers that Mackay knew or should have known that proof of No-fault insurance was required before issuing a temporary registration card and plate to George for the Jeep; that Mackay owed a duty to Lyngarkos and others similarly situated to insure that George had proper No-fault insurance coverage prior to issuing the temporary registration; that Mackay was negligent in issuing a temporary registration to George, thereby allowing George to operate the Jeep on public highways, without proof of No-fault insurance coverage; and that as a result of Mackay's negligence, Lyngarkos is unable to collect No-fault benefits for the injuries sustained in the accident. In other counts of the complaint Lyngarkos alleges that since Mackay acted as agent for the Department of Transportation for the distribution of temporary registration plates, the Department is liable and that George was negligent in failing to obtain No-fault insurance as required, and therefore also liable. However, as noted, we are concerned only with Mackay's demurrer.

The court below interpreted the count against Mackay as one to recover from Mackay for interference with Lyngarkos' right to recover No-fault benefits occasioned by the negligent failure of Mackay to secure proof that George had No-fault insurance prior to issuing the temporary registration card and plate. It then determined that Mackay had a statutory duty to make certain that George had No-fault insurance coverage before issuing a temporary registration plate; that this duty was owed to Lyngarkos and others in like circumstances; and that recovery may be had for Mackay's breach of duty. The court further held that before Lyngarkos could recover from Mackay he must exhaust all possible remedies available under the No-

fault Act against George, including that of tort liability, and that the suit against Mackay should be dismissed.

At the outset we note the unusual facts of this case preclude Lyngarkos from recovering any benefits under the No-fault Act, since the accident occurred outside of the Commonwealth and neither Lyngarkos nor the vehicle in which he was injured was insured.[2] Section 201(b)(1), (2) of the No-fault Act, 40 P.S. §1009.201(b)(1), (2). Furthermore, since no other insured vehicles were involved in the accident, there is no security from which Lyngarkos could recover under the No-fault Act. Sections 204(a), 108(a)(1) (E) and 201(b)(1), (2) of the No-fault Act, 40 P.S. §§1009.204(a), 1009.108(a)(1)(E) and 201(b)(1), (2).

Thus, Lyngarkos must resort to a tort action if he is to recover damages. While it is true that the No-fault Act has partially abolished tort liability for motor vehicle injuries, this abolition applies only to injuries that take place in the Commonwealth. Section 301(a) of the No-fault Act, 40 P.S. §1009.301(a). Thus, Lyngarkos has a tort action.

We agree with the court below that an automobile dealer who issues a temporary registration card and plate to a purchaser without first securing proof of No-fault insurance is answerable in trespass to one injured by the dealer's neglect. Section 104 of the No-fault Act, 40 P.S. §1009.104 requires owners of motor vehicles operated or registered in the Commonwealth either to carry No-fault insurance or to be self-insured. Section 1 of the Vehicle Code, Act of June 17, 1976, P.L. 162, *as amended,* 75 Pa. C. S. §1305(a) requires that an application for registration of a motor

[2] We further note that, had Lyngarkos resided in a household with a spouse or other relative who was a named insured, Lyngarkos would have been deemed an insured and would have been entitled to No-fault benefits. Section 103 of the No-fault Act, 40 P.S. §1009.103.

vehicle be accompanied by proof of insurance. Regulations promulgated by the Department of Transportation under the Vehicle Code permit automobile dealers, as agents for the Department, to issue temporary registration cards and plates. 67 Pa. Code §§131.3(a) (2), 131.4(a), found in 7 Pa. B. 1830-31 (1977). The same regulations impose upon the issuing automobile dealer the duty to inspect all documents necessary for the proper registration of a motor vehicle. *Id.* §§131.3(c)(1), 131.5(b), found in 7 Pa. B. 1830-31 (1977). There is thus created a statutory duty on the part of the dealer to ascertain that the applicant for temporary registration cards and plates has the required No-fault insurance. This duty is meant to protect all motorist by insuring that they will have recourse to the comprehensive, expeditious and equitable No-fault insurance coverage required of all motorists. Mackay owed Lyngarkos a duty to make certain that George possessed the insurance prior to issuing George a temporary registration card and plate. Restatement, Second, Torts, §286. The other allegations in Lyngarkos' complaint—that Mackay breached this duty, as a result of which Lyngarkos suffered an injury in the form of an inability to collect No-fault insurance benefits—make out a valid cause of action.[3]

The court below dismissed the claim against Mackay[4] on the ground that Lyngarkos had not yet ex-

---

[3] We agree with the lower court's observation that recovery in instances such as presented here could effectuate the purpose of the No-fault Act to secure compensation to accident victims by promoting watchfulness among those charged with implementing the No-fault Act.

[4] We reiterate that we are concerned here only with the demurrer of Mackay. We note, however, that the Department of Transportation filed a preliminary objection in the nature of a demurrer in the court below, on the ground of the sovereign immunity of the Department. The lower court has delayed its decision on the Department's demurrer pending the outcome of the present appeal.

hausted other remedies under the No-fault Act. The court apparently believed, first, that Mackay had failed to exhaust his right to seek compensation under the assigned claims plan. *See* Section 108 of the No-fault Act, 40 P.S. §1009.108. We disagree. Section 108 (a)(1) of the No-fault Act provides that a person injured in a motor vehicle accident may receive benefits through the assigned claims plan if he or she cannot obtain basic loss benefits on any of the five grounds listed in Section 108(a)(1)(A) through (E). On the facts of this case, the only ground which could conceivably permit Lyngarkos to participate in the assigned claims plan would be that the basic loss insurance "benefits are refused by an obligor for a reason other than that the individual is not entitled in accordance with this Act to receive the basic loss benefits claimed." However, Lyngarkos is not eligible for basic loss benefits precisely because, under the No-fault Act, he is not entitled to receive basic loss benefits, since the accident occurred outside of the Commonwealth, Lyngarkos was not insured and he was not the driver or an occupant of a secured vehicle. *See* Section 201(b) of the No-fault Act, 40 P.S. §1009.201 (b).

The court's second reason given for holding that Lyngarkos had failed to exhaust his remedies under the No-fault Act was its belief that under Section 301 (a)(1) of the No-fault Act, 40 P.S. §1009.301(a)(1), Lyngarkos must first seek to impose tort liability upon George, as the owner of the uninsured vehicle in which Lyngarkos was injured. However, as noted previously, Section 301(a) of the Act applies only to injuries in accidents occurring in Pennsylvania.

More fundamentally, Lyngarkos here invokes the No-fault Act only to say that he is not entitled to benefits because, *inter alia,* George had no No-fault insurance by reason of Mackay's (and in another count of

the complaint, George's) failure to comply with the statutes. The suit is not based on the events of the accident in which Lyngarkos was injured but on the fact that Mackay failed in its statutory duty to create an insurer who would pay the basic loss benefits provided by the No-fault Act. Section 102 of the No-fault Act says that its purpose is to provide a better system of compensating automobile accident victims and their survivors by furnishing basic benefits and eliminating the need to prove fault in an accident. This suit is not concerned with fault in an accident and it is brought by a person who complains that others have failed in their statutory duty to provide him with benefits.

We thus reverse the court's dismissal of the count against Mackay. Of course, it will still remain the province of the fact finder to determine at trial whether or not Lyngarkos has proven negligence on the part of Mackay in failing to ensure that George possessed No-fault insurance prior to issuing him a temporary registration card and plate. And, if Mackay is found to be negligent, it will also be necessary to decide the respective liability of Mackay and George for the inability of Lyngarkos to collect No-fault insurance benefits.

Finally, Lyngarkos takes issue with the lower court's dictum indicating that Lyngarkos, even if he were to prevail in his claim against Mackay, would be limited in his recovery to an amount equal to that which he would receive under the assigned claims plan contained in the Act. We believe that this dictum is erroneous. The object of a tort action is to obtain compensation for the plaintiff's injuries. Lyngarkos alleges that his injury in this action is his inability to recover compensation under the No-fault Act. From the fact that it was Mackay's issuance of the temporary registration card and plate to George that allowed the Jeep to be operated on public roads, it follows that, if

Lyngarkos prevails in this action, he should be allowed the full measure of benefits which he would have received if George had obtained No-fault insurance coverage. In this case, this would appear from the pleadings to be the basic loss benefits rather than the assigned claims plan. *See* Sections 201(b)(2), 204(a)(3) of the Act, 40 P.S. §§1009.201(b)(2), 1009.204(a)(3).

## ORDER

AND Now, this 26th day of February, 1981, the order of the Court of Common Pleas of Erie County, No. 3192-A-1979, sustaining the demurrer of Mackay-Swift, Inc., and dismissing the Count of the Complaint in Trespass of Anthony Lyngarkos (Count I) is reversed, and the record is remanded.