427 A.2d 673

**Neil S. TROUTMAN, Appellant,**

v.

**Michael Joseph TABB and Richard L. Goetz.**

Superior Court of Pennsylvania.

Argued April 16, 1980.

Filed March 20, 1981.

George M. Schroeck, Erie, for appellant.

James D. McDonald, Jr., Erie, for Tabb, appellee.

Edward W. Goebel, Jr., Erie, for Goetz, appellee.

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

VAN der VOORT, Judge:

This is a trespass action by an automobile passenger to recover damages for injuries suffered when the car was driven off the highway to avoid a head-on collision with an on-coming car. The drivers of both cars were named as defendants. A jury has returned a verdict in favor of the defendants and a judgment has been entered for them. On appeal, the plaintiff-appellant seeks either a judgment non obstante veredicto on the ground that the verdict was against the evidence, or a new trial because the verdict was against the weight of the evidence. We sustain the judgment of the court below for the reasons hereinafter set forth.

The accident occurred in the early afternoon of July 29, 1975 in a rural section of Erie County on Route 97 north of Waterford and approximately one mile south of Talcott. The highway was 24 feet wide and accommodated two lanes of traffic, one in each direction. Speed was posted at 55 miles per hour. Visibility was good. The road had been freshly blacktopped for about a week for a distance of a mile or more from the scene of the accident, but the berm on both sides of the highway had not yet been brought up to the grade of the road. There was a drop-off from the surface of the road to the berm varying from 4 to 18 inches. Sawhorses equipped with amber lights were placed on the

berm on both sides of the road at intervals of about 200 feet to warn of the drop-off. However, there were no construction workers, flagmen or equipment in the area. The highway was dry although mid-day heat would have a tendency to make the road slicker than normal by softening the newly placed tar and oil components.

As the drivers of the two cars approached each other, Richard L. Goetz, appellee, was headed south toward Waterford and Michael Tabb, appellee, was headed north toward Talcott. The appellant, Neil S. Troutman, was a passenger in the right front seat of the automobile driven by Goetz. As the cars approached each other, the right wheels of Tabb's car left the pavement and dropped to the berm as Tabb was rounding a curve. This occurred within a few hundred feet of the approaching Goetz car. Both cars were being driven at approximately 50 miles per hour as they approached each other, although Tabb slowed his car appreciably when his right wheels dropped to the berm in order to get his car back onto the highway. This maneuver involved getting the right wheels of Tabb's car up from the berm to the surface of the highway. Tabb drove with the right wheels on the berm for approximately 68 feet.

In order to get his car back onto the highway, Tabb necessarily turned his steering wheel sharply to the left. As he succeeded in reentering the highway, his car veered too far to the left and into the southbound lane of the on-coming Goetz car. This occurred within a car length or two of a head-on collision. Both drivers reacted instantly and instinctively by turning their cars sharply to the right. They were successful in avoiding a collision but both cars plunged off the highway, Goetz and his passenger, Troutman, going off on the west side of the road while Tabb's car jumped the highway on the east side. Tabb suffered multiple injuries and was hospitalized for several months. Goetz was unhurt, but Troutman was shaken up and fell out of the car when it came to a stop. The Goetz car was stopped when it struck one of the sawhorses and suffered fifty ($50.00) dollars damage to one of the fenders, but was otherwise undamaged.

The extent and permanence of the appellant Troutman's injuries were matters of sharp dispute at the trial. He testified that he was treated in the out-patient clinic of a local hospital immediately after the accident and returned to his home that evening. Shortly thereafter, he testified that he began to suffer pains in the neck and back, chronic headaches and a decreased function of his right wrist, the combination of which prevented him from returning to his prior self-employment which he described as general tree work. Over a period of time, he went from one doctor to another, some one-half dozen in all.

In support of his description of his injuries, Troutman offered the testimony of a doctor who said that in his opinion, the symptoms complained of were genuine and resulted from the accident. He was of the opinion that these injuries were permanent. However, he had not been told prior to his testimony that Troutman had a medical history related to back problems and dizzy spells which pre-dated the accident by several years.

Troutman initially denied the existence of a prior medical history, but was confronted with the medical records of the Veterans' Hospital in Erie which revealed an entry about a year before the accident to the effect that the appellant had sought treatment for a backache and had reported to the hospital a history of injuries to his back dating back some two years prior to his hospital visit. Another entry at the same hospital, four months before the accident, revealed a visit by Troutman for a recurrent nervous condition involving welts and dizziness. Further testimony was offered to show that the appellant had called the Veterans' Hospital shortly before the trial and attempted to persuade it to remove from its files any reference to his back problems.

Appellant's medical testimony was substantially contradicted by an orthopedic surgeon called by the appellees. In his opinion, appellant had sustained a soft-tissue injury of the cervical and thoracic areas and a temporary strain of the right wrist, but nothing more. He found no evidence of muscle spasms and concluded that there was no residual

disability of the cervical spine which related to the accident. He concluded that, in his opinion, the appellant was as well able to participate in gainful employment as he had been prior to the accident.

The evidence as to appellant's earning capability prior to the accident was also contradictory. He testified that he had been engaged in tree work from October 1974 to the date of the accident in July 1975, and claimed an average weekly net income from the work of approximately $250 per week. However, in claiming his no-fault wage loss benefit from the insurer of the Goetz car, he submitted a 1975 Federal Income Tax Return, showing a 1975 income of $3,747. This had the effect of reducing the wage loss benefit that he was being paid, and he then followed it up with a second Income Tax Return for 1975 in which he increased the amount of his reported earnings to $8,700. Neither return was filed with the Internal Revenue Service, nor did he file any Federal Income Tax Return for 1973, 1974 or 1975. He filed no Pennsylvania Income Tax Returns from 1970 through 1975. He was on welfare throughout the calendar years 1970, 1971, 1972, 1973 and most of 1974, being unemployed during that period prior to the tree work, which began in October, 1974.

Under the Pennsylvania No-Fault Insurance Law, the insurance carrier was obligated to reimburse the appellant for all medical bills and rehabilitation and for the first $15,000 of lost wages, regardless of any negligence on the part of anyone: 40 Pa.C.S. § 1009.202(b)(2). The jury was appropriately instructed that reimbursement for medical expenses should not be included because they were covered by insurance, and that if an award was made for lost earnings the jury should deduct the first $15,000 in view of the insurance reimbursement.

In passing upon the adequacy of testimony to sustain a jury's verdict, we are governed by the principles stated in *Albert v. Alter,* 252 Pa.Super. 203, 212–13, 381 A.2d 459, 464 (1977): " 'A new trial should not be granted because of a mere conflict in testimony or because the trial judge on the

same facts would have arrived at a different conclusion: [citation omitted]. Neither should it ordinarily be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the jury might have found for either party.' *Carroll v. Pittsburgh,* 368 Pa. 436, 445–446, 84 A.2d 505, 509 (1951). A new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."

■ We are also guided by the rule that in a negligence action proof of damage is an essential element. Nominal damages cannot be recovered where no actual loss has occurred. The extent and permanence of appellant's injuries and his earning capability both before and after the accident were matters on which the testimony was sharply divergent. "When a plaintiff fails to establish damage in a tort action, the defendant is entitled to a verdict although guilty of negligence." *Sisk v. Duffy,* 201 Pa.Super. 213, 216, 192 A.2d 251 (1963); *Kirby v. Carlisle,* 178 Pa.Super. 389, 392, 116 A.2d 220 (1955); *Surgent v. Stein,* 280 Pa.Super. 142, 421 A.2d 445 (1980); Prosser on Torts, § 30 (4th Ed.) 1971.

In denying appellant's motion for a judgment non obstante veredicto or a new trial, the lower Court, sitting en banc, concluded "it is apparent that the jury either found that neither defendant was negligent or that the plaintiff had already recovered under No-Fault Insurance an amount that completely satisfied him for any damages which he incurred and which were presented to the jury. After reviewing all the testimony, we are of the opinion that the plaintiff received a fair trial".

■ We come to the same conclusion. There was nothing in the evidence which required the jury to find that either driver was negligent. Whether a 50 mile speed was excessive on this highway was plainly a question for the

jury. Whether Goetz should have slowed down the instant he saw the Tabb car drop partially onto the berm or should have driven off the highway more prudently than he did involves 20–20 hindsight on a decision that had to be made within a matter of seconds. An honest exercise of judgment is all that should be required of him under the circumstances. *Polonofsky v. Dobrowsky*, 313 Pa. 73, 76, 169 A. 93 (1933); *Luizzo v. McKay*, 396 Pa. 183, 186–7, 152 A.2d 265 (1959). As the Court said in *Polonofsky*, likewise a case involving a head-on motor confrontation, "negligence may not be implied because of failure to perform a duty so suddenly and unexpectedly arising that there was no opportunity to apprehend the situation and to act according to the exigency. When one finds himself in a position of danger which is not the result of his negligence, he is not responsible if he makes a mistake in judgment in getting out. An honest exercise of judgment is all that is required of him even if he could have done better had he had time to deliberate." 313 Pa. at 76, 169 A. 93.

■ The sudden emergence of Tabb's northbound car in the southbound lane of traffic was a violation of the Pennsylvania Motor Code, 75 Pa.C.S. § 3301. Ordinarily, an unexplained violation of the Motor Code would constitute evidence of negligence as a matter of law. However, in this case, the appellant, Tabb, presented an explanation of the circumstances that brought his car into the wrong lane of traffic. A person offering an explanation for his apparent violation of law has the burden of proof, but once the explanation is given, the presence of Tabb's car in the wrong lane of traffic became only evidence of negligence to be considered along with all the other evidence bearing on that issue. *Campbell v. Fiorot*, 411 Pa. 157, 162, 191 A.2d 657, 659 (1976); *Fair v. Snowball Express*, 226 Pa.Super. 295, 298, 310 A.2d 386 (1973). *Pennsylvania Standard Jury Instructions*, Civil Sub-Committee draft, No. 3.31 at 51–52 (1972).

■ After considering Troutman's credibility, the conflicting testimony as to how seriously he had been injured and whether those injuries were permanent, the jury may well

have concluded that the $15,000 to be paid to him under the insurance coverage was adequate compensation.

Whether the jury concluded that the appellees were not negligent or that the appellant had been adequately compensated, or both, need not be determined, for either conclusion would concede their verdict.

Affirmed.

CAVANAUGH and HOFFMAN, JJ., concur in the result.