DANAHY, Judge.
In this case of first impression in Florida, neither party to the appeal has directed our attention to any case on point from any other jurisdiction. Apparently, neither party looked for any such case. Our research has led us to appellate decisions in other states which we find helpful and persuasive.
The plaintiff (Lippincott) was injured in an automobile accident involving an automobile in which Lippincott was riding as a passenger. Lippincott brought this suit for damages against the owner and operator of the automobile (Peck), the automobile dealer which sold the automobile to Peck (Exotica), and Exotica’s insurer. The trial judge dismissed the action as to Exotica and Lip-pincott appeals. We reverse.
*67 Peck purchased the automobile from Exotica in 1978 approximately four and one-half months before the accident giving rise to this action. Lippincott alleged that at the time of the purchase and delivery of the automobile to Peck, Peck had no insurance coverage of any kind on the vehicle and Exotica knew or should have known this, but nevertheless obtained registration of the automobile in Peck’s name and on his behalf by representing to a state tag agency that Peck had the insurance required by law.[1] Section 320.02(4)(a), Florida Statutes (1977), provided that every applicant for registration of a motor vehicle must submit proof that personal injury protection (PIP) benefits have been purchased as required under section 627.733. When Peck purchased his automobile, section 627.733 required PIP benefits to the extent of $5,000 as set forth in section 627.736. From the time of the purchase of the automobile until the accident giving rise to Lippincott’s injuries, Peck had no insurance coverage on the automobile.
Lippincott characterizes Exotica’s involvement in the registration of Peck’s uninsured vehicle as either simple negligence, willful or wanton misconduct, or fraud. He asserts alternative theories of liability; that Exotica’s misconduct was the proximate cause of his injuries and Exotica should be required to compensate him entirely for those injuries, or that Exotica’s misconduct renders it responsible to Lippincott to the extent of the PIP benefits which the law required Peck to have and which he did not have, and which should have been available to Lippincott to compensate him in part for his injuries. Lippincott asserts that in the event Exotica’s liability for compensatory damages is limited to the extent of the PIP benefits, punitive damages should be added.
We reject the first theory of liability. Exotica’s misconduct, which for purposes of this opinion we assume can be established, was not the proximate cause of the accident in which Lippincott was injured. In this respect, we agree with the court in Shmunes v. General Motors Corp., 146 Ga.App. 488, 246 S.E.2d 486 (Ct.App.1978). We do not believe that Exotica is responsible for the negligence of Peck, the uninsured operator of the vehicle, simply because Exotica, in violation of a statute, made it possible for Peck to own and operate the vehicle without insurance.
However, we do agree with Lippin-cott that Exotica should be responsible to him to the extent of the PIP benefits which the law required Peck to have. Exotica did cause an injury to Lippincott in that Lippin-cott was without the protection of PIP benefits at the time of the accident. In this respect we agree with the reasoning of the Pennsylvania court in a very similar case, Lyngarkos v. Commonwealth Dept. of Transportation, 57 Pa.Cmwlth. 121, 426 A.2d 1195 (1981).
REVERSED and REMANDED for further proceedings consistent with this opinion.
SCHEB, C. J., and GRIMES, J., concur.

. Section 319.23(5), Florida Statutes (1977), required motor vehicle dealers to obtain a certificate of title for the purchaser upon sale of a motor vehicle. Section 319.23(6) provided that no certificate of title may be issued until the applicant has shown that a current registration has been obtained as required by section 320.-02. These statutes are currently in effect. We note that section 320.02(5)(a) now provides that proof of insurance may be by affidavit and that “by executing and notarizing aforesaid affidavit, no licensed motor vehicle dealer shall be liable in damages for any inadequacy, insufficiency, or falsification of any statement contained therein.” That provision was not part of section 320.02 at the time of the sale by Exotica to Peck.