466 A.2d 168

**David TIERNEY, Appellant**

v.

**PENNSYLVANIA ASSIGNED CLAIMS PLAN.**

Superior Court of Pennsylvania.

Argued April 13, 1983.

Filed Sept. 23, 1983.

300

302

Edwin P. Smith, Philadelphia, for appellant.

Jeffrey A. Less, Philadelphia, for appellee.

Before HESTER, CAVANAUGH and POPOVICH, JJ.

HESTER, Judge:

Appellant, David Tierney, filed a Complaint in Equity in the Court of Common Pleas of Philadelphia County on August 7, 1981 to compel appellee, Pennsylvania Assigned Claims Plan, to assign his claim for benefits to a participating insurer under the Pennsylvania No-Fault Motor Vehicle Insurance Act [1], hereinafter "the Act". Appellee's Demurrer and Motion to Strike were duly considered and the trial court dismissed appellant's Complaint with prejudice by an Order of Court, dated November 17, 1981. Appellant filed this timely appeal from said Order.

On August 17, 1980, appellant, a Pennsylvania resident, was a passenger in a motor vehicle operated by another Pennsylvania resident. The vehicle struck a public utility pole in New Jersey causing appellant to incur severe personal injuries. Appellant, and all other members of his household were uninsured under the Act. Additionally, the automobile was not a "secured vehicle" as that term is defined in 40 P.S. § 1009.103. As a result, appellant sought benefits under the Assigned Claims Plan provision of the Act. 40 P.S. § 1009.108. Appellee refused to assign the claim due to its opinion that appellant's injuries were not compensable under the Act.

■ In response to an alleged need to circumvent the expensive, lengthy and cumbersome common law recourse of pursuing motor-vehicle accident claims in the courts, the Pennsylvania General Assembly enacted the Pennsylvania

1. Act of July 19, 1974, P.L. 489, No. 176, Art. I, 40 P.S. § 1009.101 et seq.

No-Fault Motor Vehicle Insurance Act in 1974. It was designed with the purpose of providing a "low-cost, comprehensive and fair system" [2] of compensating victims of motor vehicle accidents for damages in the nature of medical and rehabilitation expenses, work loss, replacement services and survivor's losses.[3] Since the Act's effective date in July, 1975, "every owner of a motor vehicle which is registered or which is operated in this Commonwealth by the owner or with his permission" must secure the vehicle for the "payment of basic loss benefits" and for payment of statutorily-designated sums which the owner or authorized operator may be liable to pay as damages for personal injury to any one person and for property destruction. 40 P.S. § 1009.-104(a). Such security is generally provided through a contract of insurance, and in the event security is not provided by the owner, the registration is forfeited and operation of the vehicle is prohibited. 40 P.S. § 1009.104(b).

■ An "insured" is an individual who is a named insured in a contract of insurance containing terms in compliance with the Act, a spouse or relative of a named insured, a minor in the named insured's custody or a minor in the custody of a relative of the named insured providing certain conditions are met. 40 P.S. § 1009.103. There is no dispute here with respect to appellant's and the operator's uninsured status; both failed to qualify as "insureds."

■ Appellant contends that he is nevertheless entitled to no-fault benefits as an uninsured under the Assigned Claims Plan provision of the Act. As a victim of a motor vehicle accident, appellant may be entitled to basic benefits through the Assigned Claims Plan, providing "basic loss insurance is not applicable to the injury for a reason other than those specified in the provisions on ineligible claimants." 40 P.S. § 1009.108(a)(1)(A). Failure to maintain security on an automobile involved in an accident appears to fall within this category provided by § 1009.108(a)(1)(A);

2. 40 P.S. § 1009.102(a)(5).

3. 40 P.S. § 1009.102(a)(6)(A).

therefore, upon initial study, appellant qualifies for benefits under the Assigned Claims Plan. However, a victim's eligibility for basic loss benefits, whether that eligibility is derived from his status as an "insured" or under the Assigned Claims Plan, is subject to restrictions when the accident resulting in injury to a Pennsylvania resident occurs outside the Commonwealth.

Section 1009.201(b) of the Act provides as follows:

Accident outside this State—If the accident resulting in injury occurs outside this Commonwealth, a victim or a survivor of a deceased victim is entitled to receive basic loss benefits if such victim was or is:

(1) an insured; or

(2) the driver or other occupant of a secured vehicle.

As noted earlier, appellant concedes that he was uninsured at the time of the accident; nevertheless, he contends that since the motor vehicle was secured he was not barred from compensation through the Assigned Claims Plan.

Appellant's rationale here is imaginative, but erroneous. It is his position that § 1009.201(b) does not proscribe the payment of benefits to him due to his opinion that the Assigned Claims Plan provides the security for the vehicle within which he was injured. His statutory source for this theory is § 1009.204(a)(5), which ascribes to the Assigned Claims Plan the responsibility of supplying security for the payment of basic loss benefits to injuries sustained by an uninsured motorist while traveling in an otherwise unsecured vehicle.

We do not agree that the Assigned Claims Plan can elevate an otherwise uninsured vehicle to "secured" status. Section 1009.103 defines a "secured vehicle" as one "for which security is provided in accordance with Section 104 of the Act." Section 1009.104 requires every owner of a motor vehicle to provide continuous security on such vehicle for so long as it is "either present or registered in the Commonwealth." Security can be provided, according to § 1009.104, through a contract of insurance with an insurer, through self-insurance or "by qualifying .... as an obligated

government." Section 1009.104 does not denote the Assigned Claims Plan as an alternative means for "securing" a vehicle; consequently, we find that omission as evidence of the legislature's intent to consider the procurement of a contract of insurance with an insurer or "by qualifying as a self-insurer or as an obligated government" as the only means of "securing" a vehicle. There is no ambiguity in § 1009.104; therefore, we must interpret that section according to the clear meaning of the words used therein. 1 Pa.C.S.A. § 1921(b).

Were we to subscribe to appellant's view that § 1009.204(a)(5) designates the Assigned Claims Plan as another source of "securing" a vehicle, the otherwise unequivocal meaning of § 1009.201(b) would be muddled. Each section of a statute must be interpreted and applied with reference to the remaining sections. 1 Pa.C.S.A. § 1922; *In Interest of Jones*, 286 Pa.Super. 574, 429 A.2d 671 (1981); *Crary Home v. Defrees*, 16 Pa.Cmwlth. 181, 329 A.2d 874 (1974). Section 1009.204(a)(5) delineates the Assigned Claims Plan as one of the forms of securing for payment of basic loss benefits, yet § 1009.201(b)(1) refers to a "secured vehicle" as that term is defined in § 1009.103 and § 1009.104. Section 1009.204(a)(5) cannot then, in reference to § 1009.103, § 1009.104 and § 1009.201(b)(1), provide for security of a vehicle through the Assigned Claims Plan.

Appellant's next contention is that appellee's responsibility is to assign claims to a participating insurer. According to appellant, the plan is not authorized to refuse assignment when it questions the propriety of the claim.

Section 1009.108(b)(2) sets forth the Plan's duties accordingly:

The Assigned Claims Plan *shall* promptly:

(A) assign each claim for no-fault benefits to an assignee who shall be a participating insurer; and

(B) notify the claimant of the identity and address of such assignee.

Appellant is of the opinion that the Plan, under the mandate of § 1009.108(b)(2), must assign any and all claims, regardless of merit, to a participating insurer. The participating insurer then has sole authority to honor or refuse the claim.

 We agree that the language of § 1009.108(b)(2) appears obligatory without reservation; nevertheless, under these facts, appellee must have the authority to reject the claim without first assigning it to a participating insurer. If appellee had assigned the claim to a participating insurer; § 1009.201(b) would have been rendered meaningless with respect to accidents occurring outside the Commonwealth. Once the claim is assigned, the "assignee thereafter has rights and obligations as if he had issued a policy of basic loss insurance complying with this Act applicable to the injury." 40 P.S. § 1009.108(b). Since the assignee insurer under the Assigned Claims Plan is deemed to have contracted directly with the claimant for insurance benefits, it follows that an otherwise uninsured claimant injured in an out-of-state accident would be deemed an "insured." It would be impossible, then, to have an uninsured Pennsylvania resident injured outside the Commonwealth, and § 1009.201(b) would be a superfluous provision. As stated in the statutory rules of construction, "[every] statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a).

Lastly, appellant argues that, should § 1009.201(b) be enforced, it is violative of both the Equal Protection Clause and Commerce Clause of the United States Constitution. More specifically, with respect to his equal protection argument, appellant avers that § 1009.201(b) penalizes uninsured Pennsylvania residents who engage in interstate travel and are injured in an out-of-state accident.

 The classification set forth in § 1009.301(a) of the Act withstood an equal protection challenge in *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975). Section 1009.-301(a) enumerates those situations where tort liability is not abolished by the Act and the claimant in *Singer* charged that the enumeration was an unconstitutional classification.

The *Singer* court first noted the State's right to "treat different classes of persons in different ways." Citing *Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971). Next, it recognized that, except where the classification is a form of discrimination against a suspected class or adversely affects a fundamental right, the classification passes constitutional muster, unless it is frivolous and does not serve a "legitimate governmental interest." Citing *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). Appellant does not assert that § 1009.201(b) affects a fundamental right or a suspect class; therefore, we must judge the constitutional integrity of the provision under the rational relationship test.

We agree that the Act provides basic loss benefits for uninsured motorists injured within the Commonwealth, yet denies benefits to an uninsured motorist injured in an out-of-state accident. We believe the Commonwealth has a legitimate interest in keeping insurance premiums at an affordable level so that its residents' failure to comply with the Act is the result of indolence or defiance and not excessive cost. With the influx of interstate travel, innumerable accidents involving uninsured Pennsylvania residents can occur. Elimination of coverage for such accidents contributes to lower costs and easier administration and enforcement. We add that appellant is not without recourse; he may pursue damages through the courts with the filing of the more conventional complaint in trespass.

Appellant's assertion that § 1009.201(b) violates the Commerce Clause is also without merit. We do not question that the Commerce Clause precludes the states from enacting laws which impede the free flow of interstate commerce. *Great American & Pacific Tea Co. v. Cottrell,* 424 U.S. 366, 96 S.Ct. 923, 47 L.Ed.2d 55 (1976). Nevertheless, with a plethora of state legislation serving legitimate parochial needs, yet unavoidably restricting interstate commerce, our United States Supreme Court has been called upon to apply various tests to determine which state activity affecting interstate commerce is permissible. Most re-

cently, the test has involved a close consideration of the nature of the state interest in light of the intensity of its impact on interstate commerce. The law will be upheld if it serves a legitimate parochial concern and has only an incidental effect on interstate commerce. *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). As alluded to in the above discussion concerning the equal protection clause, the Commonwealth's refusal to pay basic loss benefits to uninsured Pennsylvania motorists injured in out-of-state accidents, serves the purpose of keeping insurance premiums at an affordable rate. This, in turn, makes compliance with the law easier and assures the availability of benefits for qualifying injured motorists. We find this legitimate interest to outweigh the impact on interstate commerce, particularly in light of the fact that it restricts the movement through interstate commerce of only those motorists who traverse in vehicles in contravention of the law.

Order affirmed.

POPOVICH, J., files a concurring opinion.

POPOVICH, Judge, concurring:

I join the Majority in its ruling on a subject (i.e., the Pennsylvania No-Fault Motor Vehicle Insurance Act) that on occasion has been labelled anything but lucid. In the case at bar, however, the law quite clearly affords "to the purchaser of insurance" access to "basic loss benefits" to compensate those victims injured in motor vehicle accidents. 40 P.S. § 1009.102(b). In Pennsylvania the law mandates that every owner of a motor vehicle registered or operated in this Commonwealth must have motor vehicle insurance. 40 P.S. § 1009.104(a).

At the outset we note the unusual facts of this case preclude David Tierney from recovering any benefits under the No-Fault Act, as correctly pointed out by the Majority, since the accident occurred outside of the Commonwealth and neither Tierney nor the vehicle in which he was injured was insured. 40 P.S. § 1009.201(b)(1) & (2). Furthermore,

inasmuch as no other insured vehicles were involved in the accident, there is no security from which Tierney could recover under the No-Fault Act. 40 P.S. §§ 1009.204(a), 1009.108(a)(1)(E) and 1009.201(b)(1) & (2).

Consequently, Tierney "must resort to a tort action if he is to recover damages. While it is true that the No-[F]ault Act has partially abolished tort liability for motor vehicle injuries, this abolition applies only to injuries that take place in the Commonwealth. Section 301(a) of the No-[F]ault Act, 40 P.S. § 1009.301(a). Thus, [Tierney] has a tort action." *Lyngarkos v. Commonwealth of Pennsylvania, Depart. of Trans.,* 57 Pa.Cmwlth. 121, 124, 426 A.2d 1195, 1198 (1981).