496 A.2d 831

**Louis LIEBERMAN, Appellant,**

v.

**ABAT'S AUTO TAG SERVICE, INCORPORATED.**

Superior Court of Pennsylvania.

Argued March 12, 1985.

Filed Aug. 2, 1985.

Wilbur Greenberg, Philadelphia, for appellant.

Roger J. Harrington, Philadelphia, for appellee.

Before SPAETH, President Judge, and JOHNSON and SHOYER*, JJ.

JOHNSON, Judge:

Appellee, Abat's Auto Tag Service, Inc. (Abat's), issued a temporary registration card and plate to one Nolan Brown in November of 1980, allegedly without proof of insurance

---

* Judge SHOYER, Senior Judge of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

coverage. In April of 1981, appellant Lieberman was struck and injured by Brown in Philadelphia, Pennsylvania. Appellant brought suit in October of 1983, charging that his injuries were a direct result of Abat's negligence in issuing the registration. Appellee demurred to the complaint, arguing that the temporary registration would have necessarily expired sixty days after it was issued and that appellant's exclusive remedy would be pursuant to the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 *et seq.* In February of 1984, the trial court sustained the preliminary objections and dismissed appellant's claim, with prejudice, upon a finding that a cause of action had been made out, but that Abat's liability ceased with the expiration of the temporary registration. We agree with the trial court's conclusion and affirm accordingly; however, we find that appellant has failed to state a cause of action for negligence and that his only remedy is under the No-fault Act.[1]

■ Appellant's attempt to causally connect the injuries he sustained with Abat's alleged negligent issuance of the temporary registration is unconvincing. As our courts have stated, " 'One who negligently creates a dangerous condition cannot escape liability for the *natural and probable consequences* thereof, ...' " *Thornton v. Weaber,* 380 Pa. 590, 594, 112 A.2d 344, 346 (1955) *quoting Mars v. Meadville Tel. Co.,* 344 Pa. 29, 31, 23 A.2d 856, 857 (1942) (emphasis added). Appellant fails to argue, and it is unclear to us, how his injuries were the natural and probable result of Abat's action.

Appellant relies upon *Lyngarkos v. Commonwealth of Pennsylvania, Department of Transportation, et al.,* 57 Pa.Commw.Ct. 121, 426 A.2d 1195 (1981) to establish that a cause of action does exist against Abat's, even without proximate cause. In that case, our Commonwealth Court held that "an automobile dealer who issues a temporary

---

1. This Court may affirm a correct decision of the trial court on any basis. *See Lobianco v. Property Protection, Inc.,* 292 Pa.Super. 346, 359, 437 A.2d 417, 424 (1981) and authorities cited therein.

registration card and plate to a purchaser without first securing proof of No-fault insurance is answerable in trespass to one injured by the dealer's neglect." *Id.* at 125, 426 A.2d at 1198. However, this duty was clearly imposed in furtherance of the concerns of the No-fault Act in order "to protect all motorists by insuring that they will have recourse to the comprehensive, expeditious and equitable No-fault insurance coverage required of all motorists." *Id.* at 126, 426 A.2d at 1198.

The Commonwealth Court went on to state that

Lyngarkos is not eligible for basic loss benefits precisely because, under the No-fault Act, he is not entitled to receive basic loss benefits since the accident occurred outside of the Commonwealth, Lyngarkos was not insured and he was not the driver or an occupant of a secured vehicle.

*Id.* at 127, 426 A.2d at 1199 (citation omitted).

■ The injury suffered by Mr. Lyngarkos, therefore, was not the physical harm from the accident but rather the inability to recover medical expenses under the No-fault Act.

No claim has been made by appellant herein, injured in this Commonwealth, that he is unable to recover through recourse to the No-fault Act. The trial court thus correctly concluded that Abat's could not be held liable to appellants, and properly dismissed appellant's complaint.[2]

Order affirmed.

SPAETH, President Judge, files a concurring opinion.

SPAETH, President Judge, concurring:

I agree with the majority that appellant has no cause of action, but on different reasoning.

It is, of course, axiomatic that to state a cause of action in negligence, the plaintiff must plead and prove four ele-

---

2. Finding this case to be clearly distinguishable from *Lyngarkos,* we need not address the trial court's conclusion that liability terminated upon expiration of the temporary registration.

ments: a duty owed to him; the defendant's breach of that duty; an injury suffered; and a particular causal relationship—generally described as "proximate cause"— between the injury and the breach of duty. Prosser and Keeton, *The Law of Torts*, § 30 at 164–65 (5th ed. 1984). It is also axiomatic that all four elements are interrelated. This is especially true of the elements of "duty" and "proximate cause." As Prosser and Keeton explain the relationship:

It is quite possible to state every question which arises in connection with "proximate cause" in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur? Such a form of statement does not, of course, provide any answer to the question, or solve anything whatever; but it may be helpful since "duty"—also a legal conclusion— is perhaps less likely than "proximate cause" to be interpreted as if it were a policy-free factfinding. Thus, "duty" may serve to direct attention to the policy issues which determine the extent of the original obligation and of its continuance, rather than to the mechanical sequence of events which goes to make up causation in fact. The question whether there is a duty has most often seemed helpful in cases where the only issue is in reality whether the defendant stands in any such relation to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit. Or, reverting again to the starting point, whether the interests of the plaintiff are entitled to legal protection at the defendant's hands against the invasion which has in fact occurred. Or, again reverting, whether the conduct is the "proximate cause" of the result. The circumlocution is unavoidable, since all of these questions are, in reality, one and the same.

*Id.* at § 42 at 274. (footnotes omitted).

The injury for which a particular defendant will be held legally responsible is in turn dependent upon the relationship between that injury and the breach of duty, for a particular defendant is not responsible for all injuries suf-

fered by a particular plaintiff, but only for those "proximately caused" by that defendant, or, stated otherwise, only for those that are within the scope of the duty defendant owes to plaintiff. Thus, "[n]egligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case of some individual whose interests have suffered." *Id.* § 30 at 165. *See also Troutman v. Tabb*, 285 Pa.Super. 353, 359, 427 A.2d 673, 677 (1981) (". . . in a negligence action proof of damage is an essential element.")

This analysis makes clear, I believe, why we ought not hold appellee legally responsible: appellant suffered no injury within the scope of the duty owed to him by appellee.

Appellee was an authorized issuing agent of temporary automobile registration cards and plates. As such, his duty was defined by statute and implementing regulations. Section 1305 of the Vehicle Code, 75 Pa.C.S. § 1305 provides:

§ 1310. Temporary registration cards

(a) General rule.—The department shall provide temporary registration cards for use pending issuance or transfer of permanent registration cards. Temporary registration cards may be delivered to designated agents who shall have the authority to issue them in accordance with regulations promulgated by the department.

The regulations implementing this section in turn provide, in part:

(c) *Issuance of temporary registration cards in connection with transfer of registration.* Every issuing agent shall, upon request, issue a temporary registration card to the owner or lessee of a vehicle who has made proper application for transfer of registration on an application for certificate of title or other appropriate Departmental form.

(d) *Duty to examine documents.* The duty to examine documents shall include the following.

(1) Before issuing a temporary registration card, the issuing agent shall examine all documents necessary to the transaction.

(2) No temporary registration card shall be issued unless the following items are found to be in order:

(i) *Insurance information.*

(A) Except as provided in clause (B) or (C), check to determine that the vehicle is insured by examining one of the following documents covering the subject vehicle, the vehicle traded for the subject vehicle or another vehicle owned by the applicant:

(I) An identification card as required in 31 Pa. Code Chapter 67, Subchapter B (relating to evidence of financial responsibility).

(II) The declaration page of an insurance policy.

(III) A valid binder of insurance.

(IV) A copy of an application to the Pennsylvania Automobile Insurance Plan.

(B) If none of the documents in clause (A) is available, verification that the vehicle is properly insured may be obtained by contacting the applicant's insurance agent.

67 Pa.Admin. Code § 43.5.

These provisions form the basis of "a statutory duty ... to ascertain that the applicant for temporary registration cards and plates has the required No-Fault insurance." *Lyngarkos v. Commonwealth of Pennsylvania, Department of Transportation, et al.,* 57 Pa.Commw.Ct. 121, 126, 426 A.2d 1195, 1198 (1981).

In *Lyngarkos* the Commonwealth Court held that a breach by an issuing agent may give rise to a cause of action for negligence. That will occur, however, only when the plaintiff can plead and prove all elements of a negligence cause of action, including harm or injury attributable to the defendant's breach of duty. Here, therefore, appellant had to plead and prove that the injury he suffered was within the scope of appellee's duty to him. The scope of appellee's duty, that is, the extent of the consequences of breach for which we may hold appellee legally responsible,

is defined by the legislature's purpose in imposing the duty of inspection upon appellee. That purpose was to further the policy of the No-Fault Act, 40 P.S. § 1009.101–701, to establish "a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims...." 40 P.S. § 1009.102(b). In imposing this duty, as the majority notes, the legislature "meant to protect all motorist[s] by insuring that they will have recourse to the comprehensive, expeditious and equitable No-Fault insurance coverage required of all motorists." *Lyngarkos v. Commonwealth of Pennsylvania, Department of Transportation, et al., supra* at 126, 426 A.2d at 1198. Thus, appellee's duty to appellant extended to, but not beyond, a responsibility to ensure that appellant had a source available to compensate him for vehicle-caused injuries up to the levels provided for basic loss benefits under the No-Fault Act. *See* 40 P.S. § 1009.202.

Here, even if one assumes that appellee breached its duty as an issuing agent by negligently issuing temporary cards and plates to the uninsured motorist who in turn injured appellant, still, appellant suffered no damage from the breach. This is true because, through the Assigned Claims Plan, the legislature has provided an alternative means by which an uninsured victim of an uninsured motorist has access to basic loss benefits.[1] *See* 40 P.S. § 1009.108;

1. Appellant was injured on April 2, 1981. Section 1009.106(c) of the No-Fault Act, 40 P.S. § 1009.106(c) provides:
   (c) Time limitations on actions to recover benefits.—
   (1) If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier. If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same or another claimant; may be commenced not later than two years after the last payment of benefits.
   and 40 P.S. § 1009.108(c) in turn provides:
   (c) Time for presenting claims under assigned claims plan.—
   (1) Except as provided in paragraph (2) of this subsection, an individual authorized to obtain basic loss benefits through the

*Tubner v. State Farm Mutual Auto Insurance Co.,* 496 Pa. 215, 218, 436 A.2d 621, 622 (1981) ("[u]nder Section 108(b), insurers are assigned to compensate motor vehicle accident victims for whom insurance is not carried *as if* a policy of basic loss insurance had been issued[.]") Appellee's negligence, therefore, if it was such, was *injuria absque damno,* "a wrong done, but from which no loss or damage results, and which, therefore, will not sustain an action." *Black's Law Dictionary,* 924 (4th ed. rev. 1968).

I therefore concur in the order affirming the order of the trial court.

assigned claims plan shall notify the assigned claims bureau of his claim within the time that would have been allowed pursuant to section 106(c) of this act for commencing an action for basic loss benefits against any obligor, other than an assigned claims bureau, in any case in which identifiable no-fault insurance coverage was in effect and applicable to the claim. [footnote omitted]

Whether or not an action under the Assigned Claims Plan is now untimely, however, does not affect the scope of the duty owed to appellant at the time the injury occurred. There is no claim that appellant was not then entitled to coverage through the Assigned Claims Plan.