614 A.2d 775

**Robert CAPUZZI, Administrator of the Estate of Eleanor Capuzzi, Deceased, as Parent and Natural Guardian of Nicholas Capuzzi, a Minor, and Amanda Capuzzi, a Minor and in His Own Right, Appellant,**

v.

**Richard HELLER, Joseph Becker, Theresa Becker Benfield, Anthony Grandinetti, Van's Auto Tags, Middle Bucks Area Vocational Technical Institute, Centennial School District and William Tennent School District.**

Superior Court of Pennsylvania.

Argued July 16, 1992.

Filed Oct. 9, 1992.

See also 125 Pa.Comwlth. 678, 558 A.2d 596.

552

Roy T.J. Stegena, Media, for appellant.

Edward M. Wild, Doylestown, for Van's Auto Tags, appellee.

Before CIRILLO, TAMILIA and POPOVICH, JJ.

CIRILLO, Judge:

This is an appeal from an order entered in the Court of Common Pleas of Bucks County granting summary judgment in favor of appellee Van's Auto Tags (VAT) and against appellant Robert Capuzzi (Capuzzi), administrator of the estate of Eleanor Capuzzi. We affirm.

On September 8, 1986, Richard Heller's (Heller) vehicle collided with Eleanor Capuzzi's vehicle, killing Eleanor Capuzzi and seriously injuring her two young children. Earlier that year, on July 14, 1986, VAT had issued Heller a temporary vehicle registration signed by the owner of VAT. The owner of VAT admitted to signing hundreds of such applications in advance, for "expediency" sake. Heller knowingly and falsely represented to VAT that he had proper insurance; moreover, Heller told the VAT employee that he had a policy with "Metropolitan" and that his policy number was the same as his

social security number. On the date of the accident, however, Heller was, in fact, uninsured.

On appeal, Capuzzi presents one issue for our consideration: Whether the court below erred in holding that Capuzzi was not entitled to recover damages from VAT which provided temporary vehicle registration to an uninsured driver in violation of Pennsylvania regulations, on the grounds that, since Capuzzi collected uninsured motorist coverage under his own automobile insurance policy, he was not also entitled to recover from VAT at least the minimum liability limit that the uninsured tortfeasor (Heller) should have had under Pennsylvania law?

We will uphold a grant of summary judgment only in those cases in which the pleadings, depositions, interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b); *Rosen v. Tesoro Petroleum Corporation,* 399 Pa.Super. 226, 228–29, 582 A.2d 27, 28–29 (1990). In reviewing a grant of summary judgment, we must accept as true all well-pleaded facts in the non-moving party's pleadings and give the non-moving party the benefit of all reasonable inferences to be drawn therefrom. *Lookenbill v. Garrett,* 340 Pa.Super. 435, 490 A.2d 857 (1985).

VAT is an authorized issuing agent of temporary automobile registration cards and plates. *See* 67 Pa.Code § 43.4. VAT, like most automobile dealers, is permitted to issue temporary cards and plates to new car buyers as well as to individuals who are renewing their vehicle registration. The duties of an issuing agent are defined by section 43.5 of the Motor Vehicle Code which provides in pertinent part:

*Issuance of temporary registration cards.*

(d) *Duty to examine documents.* The duty to examine documents shall include the following:

(1) Before issuing a temporary registration card, the issuing agent shall examine all documents necessary to the transaction;

(2) A temporary registration card may not be issued unless the following items are found to be in order:

(i) *Insurance information.*

(A) Except as provided in clause (B) or (C), check to determine that the vehicle is insured by examining one of the following documents ...

(I) An identification card as required in 31 Pa. Code Chapter 67, Subchapter B (relating to evidence of financial responsibility).

(II) The declaration page of an insurance policy.

(III) A valid binder of insurance.

(IV) A copy of an application to the Pennsylvania Automobile Insurance Plan.

(B) If none of the documents in clause (A) is available, verification that the vehicle is properly insured may be obtained by contacting the applicant's insurance agent.

67 Pa.Code § 43.5.

■ In his complaint, Capuzzi avers that VAT had breached its statutory duty by failing to request or review the requisite documents and by failing to confirm with Metropolitan that Heller was indeed a policyholder. Moreover, Capuzzi asserts that Heller did not indicate to VAT that he had reliable financial arrangements, deposits, or resources to demonstrate that he was adequately self-insured as required by the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1701 *et seq.,* nor was Heller requested to produce documents indicating that he was self-insured. Capuzzi contends, therefore, that but for VAT's breach of its statutory duty to verify the proof of insurance, Capuzzi would be entitled to receive at least the minimum automobile liability insurance Heller was required to carry.

The statutory duty set forth in section 43.5 of the Pennsylvania Code defines the standard of care to which an issuing agent such as VAT will be held. The rationale for this requirement is the protection of all motorists—ensuring that they will have recourse to comprehensive expeditious and equitable no-fault insurance coverage.

In *Lyngarkos v. Commonwealth of Pennsylvania, Department of Transportation,* 57 Pa.Commw. 121, 125, 426 A.2d 1195, 1198 (1981), the court held that an automobile dealer [issuing agent] which issues a temporary registration card and plate to a purchaser without first securing proof of no-fault insurance is answerable in trespass to one *injured by the dealer's neglect. Id.,* 57 Pa.Commw. at 124, 426 A.2d at 1198 (emphasis added) [1]. The trespass action is based upon the statutory duty imposed upon the issuer, as an agent of the Department of Transportation, to inspect all documents necessary for proper registration of a motor vehicle. The legislature's purpose for imposing this duty of inspection was to further the policy of the No–Fault Act, that is, to establish "a Statewide system of prompt and adequate *basic loss benefits* for motor vehicle accident victims...." 40 P.S. § 1009.102(b) (repealed). *Id.* (emphasis added).

With this policy in mind, in *Lieberman v. Abat's Auto Tag Service,* 344 Pa.Super. 350, 496 A.2d 831 (1985), our court determined that the scope of the issuer's duty is limited. The *Lieberman* court explained that "injury" was "not the physical harm from the accident but rather the inability to recover medical expenses under the No-fault Act." *Id.,* 344 Pa.Superior Ct. at 352, 496 A.2d at 832.

In *Lieberman,* Abat's Auto Tag Service had issued a temporary registration and license plate to Nolan Brown, allegedly without proof of insurance coverage. Lieberman was struck and injured by Brown. Lieberman filed suit against Abat's, contending that his injuries were a direct result of Abat's

1. We note that the *Lyngarkos, supra,* and *Lieberman, infra,* cases were decided when the No–Fault Motor Vehicle Insurance Act (the No–Fault Act) governed automobile insurance. 40 P.S. §§ 1009.101–1009.701. Repealed. Feb. 12, 1984, P.L. 26, No. 11, § 8(a), effective Oct. 1, 1984. The accident in the instant case occurred in 1986, and is therefore governed by the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1701 *et seq.* Despite the repeal of the No–Fault Act and the subsequent enactment of the MVFRL, the purpose of the regulations and the policy underlying insurance law remains the same. Moreover, "[w]hen a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." 1 Pa.C.S. § 1922(4).

negligence. This court held that although the tag service cannot be held responsible for the physical injuries to the plaintiff under a negligence theory, the plaintiff's inability to recover insurance benefits as a result of the issuing agent's breach of its statutory duty is actionable. *Id.*, 344 Pa.Superior Ct. at 353, 496 A.2d at 832–33. This court, however, affirmed the dismissal of Lieberman's action because Lieberman had failed to claim that he was "unable to recover through recourse to the No-fault Act." *Id.*, 344 Pa.Superior Ct. at 353, 496 A.2d at 832–33. Lieberman's sole remedy was under the No-fault Act. *Id.*, 344 Pa.Superior Ct. at 352, 496 A.2d at 832.

The concurring opinion authored by the Honorable Edmund J. Spaeth, Jr., President Judge, instructs us further:

[A]ppellant suffered no injury within the scope of the duty owed to him by appellee. Appellee was an authorized issuing agent of temporary automobile registration cards and plates. As such, his duty was defined by statute and implementing regulations.... Here, even if one assumes that appellee breached its duty as an issuing agent by negligently issuing temporary cards and plates to the uninsured motorist who in turn insured appellant, still, appellant suffered no damage from the breach. This is true because, through the Assigned Claims Plan, the legislature has provided an alternative means by which an uninsured victim of an uninsured motorist has access to basic loss benefits. ...

Appellee's negligence, therefore, if it was such, was *injuria abseque damno*, "a wrong done, but from which no loss or damage results, and which, therefore will not sustain an action." Black's Law Dictionary, 924 (4th ed. rev. 1968).

*Id.*, 344 Pa.Superior Ct. at 356–57, 496 A.2d at 834–35 (Spaeth, P.J., concurring).

Today we adopt this rationale. An issuer's liability does not extend beyond the responsibility to ensure that the injured party has "a source available to compensate him for vehicle-caused injuries up to the levels provided for basic loss benefits under the No–Fault Act. *See* 40 P.S. § 1009.202 [repealed]." *Id.* The statutory regulations imposed upon the issuing agents have as their purpose the protection of the public; an issuing agent's violation of these duties are punish-

able by sanction. *See* 67 Pa.Code § 43.11. We refuse to impose a further duty upon the issuing agent to pick up where the first party benefits leave off, and become in effect a provider of liability insurance.

Here, Capuzzi admitted in interrogatories that he had received all "benefits for medical expenses, income loss, accidental death, or funeral benefits" that he was entitled to under his own uninsured motorists coverage. When asked what "personal injury protection" benefits Capuzzi believed he would have been entitled to receive had Heller been insured, Capuzzi answered "none." Capuzzi concedes that he has collected first party benefits and uninsured motorist coverage under his own policy in the amount of $100,000.00. Unlike the "uninsured victim of an uninsured motorist," Capuzzi had a source available to compensate him for injury up to the levels provided for under the MVFRL pertaining to first party benefits. *Lieberman,* 344 Pa.Super. at 358, 496 A.2d at 835. *See* 75 Pa.C.S. §§ 1702, 1712.[2] Accordingly, we hold that the duty owed by an issuer of a temporary registration to one who has been injured by the issuer's neglect is limited to the extent that the injured party is unable to recover first party benefits as provided in the Motor Vehicle Financial Responsibility Act, 75 Pa.C.S. §§ 1701 *et seq.* The trial court's order granting summary judgment in favor of appellee VAT is affirmed.

Order affirmed.

POPOVICH, J., concurs in the result.

---

2. Section 1702 of the MVFRL defines "benefits" or "first party benefits" as follows: "Medical benefits, income loss benefits, accidental death benefits and funeral benefits." 75 Pa.C.S. § 1702.