**Jarrell B. POLLARD, Appellant,**

v.

**CHRYSLER CREDIT CORPORATION, a Delaware corporation, Appellee,**

**and**

**Mark Lee Hill, an individual, Defendant.**

**No. 75574.**

Court of Appeals of Oklahoma, Division No. 1.

Oct. 15, 1991.

Barry W. Johnson, Oklahoma City, for appellant.

James H. Bellingham, Oklahoma City, for appellee.

BAILEY, Judge:

Appellant Jarrell B. Pollard (Pollard) seeks review of the Trial Court's order granting summary judgment to Appellee Chrysler Credit Corporation (CCC) in Pollard's action to recover for personal injuries and damage to his vehicle suffered in a collision with a vehicle driven by Defendant Mark Lee Hill (Hill) and financed by CCC. Herein, Pollard asserts error of law by the Trial Court in granting summary judgment to CCC.

In 1985, Hill purchased a Chrysler automobile and financed the purchase through CCC. In 1986, Hill allowed his liability insurance to lapse, with CCC given notice thereof. Thereafter, under the Hill's Retail Installment Contract (financing agreement) with CCC, CCC procured collision and comprehensive insurance coverage on Hill's automobile, charging the premiums therefor to Hill and naming itself as loss payee.

In April, 1988, while driving his car, Hill collided head-on with Pollard's vehicle, resulting in physical injuries to Pollard and the total destruction of both vehicles. Pollard commenced the instant action naming Hill and CCC defendants therein. As against CCC, Pollard asserted that CCC having assumed the responsibility of obtaining insurance on Hill's vehicle, but having failed to obtain mandatory liability coverage therein, rendered CCC liable to Pollard for his personal and property damage.

On CCC's motion for summary judgment, however, the Trial Court found no duty of CCC to obtain liability insurance, and granted summary judgment to CCC. Pollard now appeals from that ruling, and in this appeal, as he did below, Pollard argues that when CCC assumed, on Hill's behalf and at Hill's expense, the duty to obtain insurance coverage on Hill's vehicle, CCC also assumed the duty to obtain the statutorily mandated liability insurance coverage under 47 O.S.1981 § 7-601.[1] Thus, says Pollard, because CCC so failed, CCC is now liable to him for his injuries.

■ Neither party disputes that Oklahoma law requires all vehicle owners or operators to maintain liability insurance (or other authorized security) unless the vehicle is exempt by statute. See, *Equity Mutual v. Spring Valley Wholesale Nursery, Inc.*, 747 P.2d 947, 951 (Okl.1987). However, it is well established under Oklahoma law that a security interest is not the equivalent of an ownership right. See, *Catlin Aviation Co. v. Equilease*, 626 P.2d 857 (Okl.1981) (ownership and lien are incompatible); *Coursey v. Fairchild*, 436

---

1. That statute provides in pertinent part:

*[E]very owner* of a motor vehicle ... shall, at all time, maintain in force with respect to such vehicle security for the payment of loss resulting from the liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle. *Every person, while operating or using a motor vehicle registered in this state which is not owned by* *such person,* shall maintain in force security for the payment of loss resulting from the liability imposed by law for bodily injury, death or property damage sustained by any person arising out of the operation or use of the vehicle, unless such security has been provided by the owner in accordance with this section which does not exclude said person from coverage. (Emphasis added.)

P.2d 35, 38 (Okl.1967) (lien does nor transfer title to property which is subject to it).

In that regard, we find no language in 47 O.S. § 7–601 imposing an obligation upon a secured creditor to obtain liability insurance for vehicles which the creditor finances for its customer. On the contrary, we read § 7–601 as imposing a non-delegable duty on the "owner" or "operator" of a registered and nonexempt vehicle to maintain liability insurance coverage on that vehicle. When CCC obtained collision protection for Hill's car, CCC assumed no duty to provide Hill with liability coverage, CCC only exercising its rights under the contract to protect its security. We therefore reject Pollard's assertion of CCC's liability.

In a related argument, Pollard argues that § 7–601 embodies a public policy to provide compensation for injury or loss to members of the public with actionable claims, and that to limit his recovery, as an innocent third party, contravenes established public policy of this state. See, *Young v. Mid-continent Casualty Company,* 743 P.2d 1084 (Okl.1987). Thus, says Pollard under this analysis, CCC—having assumed Hill's duty to obtain insurance— should not be allowed to avoid the public policy of this state as expressed in 47 O.S. § 7–601 and mandating liability insurance coverage to compensate for losses such as his.

However, we find *Young* inapplicable. *Young* involved a dispute between an insured and his insurance company regarding an exclusion in a liability policy, and the Supreme Court found the particular exclusion which purported to limit liability void as against public policy. The instant case, on the other hand, involves a dispute between a secured creditor and a stranger/third party injured by the owner of the creditor's collateral, and Pollard's reliance on *Young* is therefore misplaced. In fact, and contrary to Pollard's argument, we deem it sound public policy to allow a creditor to protect its interest in collateral *without* having to protect the world from the acts of its debtor.[2]

In the instant case, Pollard entered into a Retail Installment Contract, or financing agreement, to purchase the vehicle. This agreement, as consumer paper, was bought by CCC. Under the terms of the agreement, Hill was required to insure the vehicle at his expense against risk of "damage, destruction or loss for so long as any amount remains unpaid", with loss payable to CCC as creditor. The agreement further provided that if Hill failed to obtain/maintain such insurance, CCC was entitled to insure its interest therein on behalf of Hill and at Hill's expense. This CCC did when Hill allowed his insurance to lapse. The insurance policy so obtained provided coverage limited to physical damage only, and specifically stated it did not purport to meet statutory requirements for "no fault" or liability insurance. In short, under the facts and circumstances of this case, we find no evidence that CCC assumed, equitably or legally, Hill's duty to obtain/maintain liability insurance coverage under 47 O.S. § 7–601.

The order of the Trial Court granting summary judgment to CCC is therefore AFFIRMED.

GARRETT, P.J., and ADAMS, J., concur.

2. On this issue, other jurisdictions have held that financial interest in an automobile sufficient to obtain property damage insurance coverage thereon does not place the insured in a position of potential liability so as to vest in the insured an insurable interest as to liability. That is, where one is not the owner or operator of an automobile, nor legally responsible for its use, one may not obtain liability insurance coverage thereon. See, *Bendall v. Home Indemnity Co.,* 286 Ala. 146, 238 So.2d 177 (1970); *American Mutual Fire Insurance Co. v. Passmore,* 275 S.C. 618, 274 S.E.2d 416 (1981); *Great American Insurance Co. v. Lipe,* 116 Ga.App. 169, 156 S.E.2d 490 (1967).