2016 OK CIV APP 41

James Ray BLAKLEY,
Plaintiff/Appellant,

v.

M&N DEALERSHIPS, L.L.C., d/b/a Edmond Hyundai; Sean A. Miller; and Bryce Rhoads, Defendants/Appellees.

Case No. 114,060

Court of Civil Appeals of Oklahoma,
DIVISION III.

FILED DECEMBER 4, 2015

Mandate Issued: 06/27/2016

Robert C. Smith, Jr., Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, Oklahoma, for Appellant,

Daniel C. Hayes, R. Todd Goolsby, Goolsby, Proctor, Heefner & Gibbs, P.C., Oklahoma City, Oklahoma, for Appellees M&N Dealerships, L.L.C. and Bryce Rhoads,

Aaron D. Johnson, Jagers & Johnson, Attorneys at Law, P.L.L.C., Oklahoma City, Oklahoma, for Appellee Sean A. Miller.

Opinion by Larry Joplin, Judge:

¶1 Plaintiff/Appellant James Ray Blakley (Plaintiff) seeks review of the trial court's order granting the motion for summary judgment of Defendant/Appellee Sean A. Miller (Miller) and denying Plaintiff's motion to reconsider its previous order granting the motion for summary judgment of Defendants/Appellees M&N Dealerships, L.L.C., d/b/a Edmond Hyundai (Edmond Hyundai) and Bryce Rhoads (Rhoads) in Plaintiff's action seeking damages for the Defendants' alleged negligence in issuing a temporary license tag without obtaining proof of liability insurance from its buyer. In this proceeding, Plaintiff seeks to impose upon the commercial seller of a motor vehicle a duty to obtain proof of liability insurance from its buyer before issuing a temporary license tag.

¶2 Edmond Hyundai is an automobile dealership. Miller worked for Edmond Hyundai as a salesman. Rhoads worked for Edmond Hyundai in its finance department.

¶3 On May 21, 2009, Edmond Hyundai, by its salesman, Miller, sold a vehicle to Stevie Dawn Myers and Eddie Gregory, a family friend of Myers who co-signed the purchase money note. At the time of the sale according to Plaintiff, Miller and Rhoads represented that the payments on the vehicle included payment for "full coverage" insurance on the vehicle. Upon consumation of the sale, Edmond Hyundai placed a temporary license tag on the vehicle.

¶4 On June 28, 2009, while driving the vehicle purchased from Edmond Hyundai, Stevie Dawn Myers collided with the vehicle operated by Plaintiff. Plaintiff alleged that Myers was negligent and her negligence caused him substantial injury to his person and property. Plaintiff then commenced an action against Myers to recover damages.

¶5 By letter dated September 8, 2009, the insurer denied issuance of a policy of liability insurance covering Myers' vehicle. Plaintiff then commenced an action against Defendants, but proceedings in that action were stayed and the action closed by administrative order on June 21, 2011 after the trial court granted Edmond Hyundai's motion to compel arbitration. By journal entry filed on August 12, 2011, Plaintiff obtained a judgment against Myers for damages in the sum of $958,801.21.

¶6 On September 2, 2011, Plaintiff commenced another action against Defendants, but that action was dismissed without prejudice upon Plaintiff's failure to timely have summons issued. On April 17, 2012, Plaintiff filed the instant action. Plaintiff alleged that Defendants placed a temporary license tag on the vehicle sold to Myers knowing the insurance on the vehicle did not include liability insurance coverage, that Defendants acted negligently or intentionally in issuing a temporary tag knowing its buyer did not have liability insurance, and that Defendants were accordingly liable to him for the damages he sustained at the hands of the uninsured buyer of the vehicle, Myers.

¶7 Defendants Edmond Hyundai and Rhoads filed a motion for summary judgment. To its motion, they attached evidentiary materials demonstrating the facts we have recounted. Included in the materials were portions of the deposition testimony of the co-signor, Gregory, in which he averred that a salesman, a sales manager named "David" and a loan officer told him the cost of "full coverage" insurance was included in the car payment, but that he did not ask what insurance was included in "full coverage," and he admitted that the purchase agreement contained no provision for insurance coverage of any kind. He also admitted he did not speak

to Rhoads until after the automobile accident. Also included in the attachments was a copy of the insurance policy declarations page, provided to Myers and Gregory, reflecting collision coverage, only, but not liability.

¶ 8 Defendants argued that § 7–601(A) of title 47, O.S., imposed upon "every *owner* of a motor vehicle" the non-delegable duty to maintain liability insurance coverage, and that, as the sellers of the vehicle to Myers and Gregory, the law imposed no duty on them to obtain liability insurance coverage for the vehicle. *Pollard v. Chrysler Credit Corp.*, 1991 OK CIV APP 107, 819 P.2d 719. Further, said Defendants, Plaintiff was not a party to any agreement to obtain insurance, nor an insured, nor a third-party beneficiary of any insurance, and therefore had no standing to complain of any failure of the seller to obtain insurance. *See, Colony Ins. Co. v. Burke*, 698 F.3d 1222 (10th Cir. (Okl.) 2012); *Swickey v. Silvey Companies*, 1999 OK CIV APP 48, 979 P.2d 266. Defendants additionally asserted Plaintiff's claims accrued on June 28, 2009, the date of the accident, and this action, commenced September 2, 2011, was not timely brought within two years, and was therefore barred by the two-year statute of limitations, 12 O.S. § 95(A)(3). Defendants also argued that the evidentiary materials did not demonstrate Rhoads' involvement in the sale or any representations by him concerning the extent of insurance coverage.

¶ 9 Plaintiff objected. Plaintiff agreed that Oklahoma law required every owner of a

motor vehicle registered in this state to maintain liability insurance coverage on the vehicle, and that, in order to register and obtain a license tag for a vehicle in this state, the owner must furnish to a motor license agent proof of liability insurance coverage on the vehicle. 47 O.S. 2011 § 7–601(A)[1]; 47 O.S. 2011 § 1112(3).[2] On this basis, however, and as a matter of first impression, Plaintiff thus argued that, to the extent an automobile dealer is authorized to issue a temporary license tag prior to registration of a vehicle with the state, the dealership is charged with the same legal duty as a motor license agent to verify the existence of a valid policy of liability insurance prior to issuance of the temporary license tag, and for the breach of that legal duty in the present case, Edmond Hyundai was liable to him for the damages caused by the uninsured buyer, Myers. *See, Lyngarkos v. Com. Dept, of Transp.*, 57 Pa. Cmwlth. 121, 426 A.2d 1195 (1981). Plaintiff asserted that a cause of action against an automobile dealer for the failure to require a buyer of a vehicle to produce proof of liability insurance should be recognized, and that recognition of such a cause of action was entirely consistent with the public policy underlying mandatory liability insurance coverage, i.e., to protect "the public from the financial hardship which may result from the use of automobiles by financially irresponsible persons." *Hartline v. Hartline*, 2001 OK 15, ¶ 16, 39 P.3d 765, 771. *And see*, Restatement (Second) of Torts § 874A (1979).[3]

¶ 10 Plaintiff further asserted his cause of action did not accrue until he received from

---

1. "Every owner of a motor vehicle registered in this state, other than a licensed used motor vehicle dealer, shall, at all times, maintain in force with respect to such vehicle security for the payment of loss resulting from the liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle. . . ."

2. "Every owner of a vehicle possessing a certificate of title shall, before using the same in this state, make an application for the registration of such vehicle with a motor license agent. The application shall contain such information as shall be required by the Oklahoma Tax Commission. Every owner, when making application for registration, shall furnish the following information: . . . 3. a. The name of the carrier of the

owner's insurance policy for such vehicle, b. The policy number of the owner's policy for such vehicle, if available, or the name of the agent or office where the existence of security may be verified, if other than the carrier, [and] c. The effective dates of the owner's policy for such vehicle, . . ."

3. "When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action."

the insurer a letter denying liability insurance coverage on September 8, 2009, that he timely commenced the instant action September 2, 2011, that the action was dismissed without prejudice December 2, 2011, that he refiled the action April 17, 2012, within one year of dismissal otherwise on the merits as permitted by 12 O.S. § 100, and the statute of limitations did not bar his claims. Plaintiff also presented evidentiary materials argued to demonstrate some factual controversy concerning the extent of Rhoads' participation in the sale.

¶ 11 By journal entry dated October 17, 2014, and filed February 24, 2015, the trial court granted the motion for summary judgment of Edmond Hyundai and Rhoads, holding "there is no Oklahoma authority establishing . . . a duty upon the seller of a vehicle to confirm the buyer has compulsory liability insurance for the vehicle the buyer is buying."

¶ 12 On April 27, 2015, Defendant Miller filed a motion for summary judgment. To his motion, he also attached evidentiary materials showing the facts we have recounted. Included in his attachments were portions of his deposition testimony, in which he averred that, at the time of the sale to Myers and Gregory, he was not authorized to determine whether a person was a qualified buyer or to question the sales manager and finance manager concerning whether buyer had insurance, that he did not know, and had no reason to know, whether Myers possessed liability insurance coverage on the vehicle she bought, and that, after consummation of the sale in the finance office, his sole involvement was to attach the temporary tag to the vehicle.

¶ 13 As did Edmond Hyundai and Rhoads, Miller likewise argued that the law imposed no legal duty on Edmond Hyundai to obtain proof of liability insurance coverage from the buyer of a purchased vehicle. Miller further argued that, because he had no authority to question the buyer, the sales manager or the finance manager concerning liability insurance coverage on the purchased vehicle, the law imposed no duty on him, a mere salesman, to verify a buyer's possession of liability insurance coverage.

¶ 14 On May 15, 2015, Plaintiff filed a response and objection to Miller's motion for summary judgment, and therein, requested the trial court's reconsideration of its previous ruling granting the motion for summary judgment of Edmond Hyundai and Rhoads. Plaintiff again argued the trial court should recognize a cause of action against an automobile dealer for its failure to obtain proof of liability insurance from a buyer prior to issuing a temporary tag.

¶ 15 Miller filed a reply. Miller argued that, as an employee of Edmond Hyundai, the law imposed on him no duty to Plaintiff, a stranger to the transaction for the sale and purchase of the vehicle, and that Plaintiff's claim of negligence against him accordingly failed.

¶ 16 Upon consideration of the parties' submissions and arguments on Miller's motion for summary judgment, and on reconsideration of its previous order granting the motion for summary judgment of Edmond Hyundai and Rhoads, the trial court again held the law imposed no duty on any of the Defendants to obtain proof of compulsory liability insurance. By journal entry filed May 27, 2015, the trial court granted Miller's motion for summary judgment and denied Plaintiff's motion to reconsider. Plaintiff now seeks review in this Court, and the matter stands submitted on the trial court record.[4]

¶ 17 "Summary judgment is appropriate only where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Wathor v. Mutual Assur. Adm'rs, Inc.*, 2004 OK 2, ¶ 4, 87 P.3d 559, 561. (Citation omitted.) "As this decision involves purely legal determinations, our standard of review of a trial court's grant of summary judgment is *de novo*[, and w]e review all inferences and conclusions to be drawn from underlying facts contained in evidentiary materials in a light most favorable to the party opposing the motion." *Id.*

---

4. *See*, Rule 13(h), Rules for District Courts, 12 O.S. 2011, Ch. 2, App.; Okla.Sup.Ct.R. 1.36, 12 O.S. 2011, Ch. 15, App. 1.

(Emphasis original.) "Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 11, 160 P.3d 959, 963. "Summary judgment will be reversed if the appellate court determines that reasonable men might reach different conclusions from the undisputed material facts." *Id.*

¶ 18 "Absent some pure error of law, the trial court's ruling on a motion to reconsider will not be disturbed unless affected by an abuse of discretion." *Waldrop v. Hennessey Utilities Authority*, 2014 OK CIV APP 106, ¶ 7, 348 P.3d 213, 215. (Citation omitted.) "Where, as here, the assessment of the trial court's exercise of discretion in denying a motion to reconsider depends on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our *de novo* review of the summary adjudication's correctness." *Id.*

¶ 19. In the present case, and in his objection to the motion for summary judgment of Edmond Hyundai and Rhoads, Plaintiff specifically characterized his claim, as based, not for breach of contract to obtain insurance, but rather on the alleged negligence of Defendants in failing to require Myers to produce proof of compulsory liability insurance coverage before they issued and attached the temporary license tag to the vehicle she bought. In this respect:

The threshold question in any action for negligence is the existence of a duty. The existence of a legal duty is a question of law for the court. Where the defendant did not owe a duty of care to the plaintiff, there can be no liability for negligence as a matter of law.

---

5. "[A]n automobile dealer who issues a temporary registration card and plate to a purchaser without first securing proof of No-fault insurance is answerable in trespass to one injured by the dealer's neglect...."

6. "[A]n application for registration of a motor vehicle [must] be accompanied by proof of insurance. Regulations promulgated by the Department of Transportation under the Vehicle Code permit automobile dealers, as agents for the De-

*Trinity Baptist Church v. Brotherhood Mut. Ins. Services, L.L.C.*, 2014 OK 106, ¶ 21, 341 P.3d 75, 82. (Citations omitted.) "The most important consideration in determining the existence of a duty of care is foreseeability of harm to the plaintiff," and "[g]enerally, a defendant owes a duty of care to the plaintiff who is foreseeably endangered by defendant's conduct with respect to all risks that make the conduct unreasonably dangerous," but the "[f]oreseeable risk of harm that will lead the law to say a particular plaintiff is entitled to protection will not generally be extended beyond reason and good sense." *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 14, 160 P.3d 959, 964–965. (Citations omitted.) The question in this case is whether, as a matter of statute or the common law, Edmond Hyundai owed a duty to the public in general, and Plaintiff in particular, i.e., those who might foreseeably be injured by its buyer's failure to maintain compulsory liability insurance in the event of an accident, to require the buyer of a vehicle to produce proof of the compulsory liability insurance coverage before Edmond Hyundai attached a temporary license tag to the purchased vehicle.

¶ 20 In support of this proposition, Plaintiff cited *Lyngarkos v. Com. Dept, of Transp.*, 57 Pa.Cmwlth. 121, 426 A.2d 1195 (1981), where the Pennsylvania state court recognized the imposition of such a duty on the commercial seller of motor vehicles. 426 A.2d at 1198.[5] In so holding, however, the Court in *Lyngarkos* recognized specific legislation and regulations enacted in Pennsylvania which "impose upon the issuing automobile dealer the duty to inspect all documents necessary for the proper registration of a motor vehicle," and "thus create[ ] a statutory duty on the part of the dealer to ascertain that the applicant for temporary registration cards and plates has the required No-fault insurance." *Id.*[6] Unlike

---

partment, to issue temporary registration cards and plates. The same regulations impose upon the issuing automobile dealer the duty to inspect all documents necessary for the proper registration of a motor vehicle. There is thus created a statutory duty on the part of the dealer to ascertain that the applicant for temporary registration cards and plates has the required No-fault insurance. This duty is meant to protect all motorists by insuring that they will have recourse to the

Pennsylvania, however, Oklahoma has not enacted any legislation or regulations imposing upon the dealer of automobiles such a statutory duty "to ascertain that the applicant for temporary registration cards and plates has the required No-fault insurance."

¶ 21 Oklahoma law *requires* a dealer of new and used vehicles to affix a temporary license tag to a vehicle upon its sale. 47 O.S. §§ 1137.1(E)[7] (used vehicles), 1137.3[8] (new vehicles). And, Oklahoma law mandates that "[e]very *owner* of a vehicle possessing a certificate of title shall, before using the same in this state, *make an application for the registration* of such vehicle *with a motor license agent*." 47 O.S. § 1112. (Emphasis added.) In applying for registration:

Every *owner*, when making application for registration, shall furnish the following information:

1. A full description of the vehicle including the manufacturer's serial or other identification number, any security interest upon the vehicle, an odometer reading of the vehicle when applicable, and the insurance security verification to the vehicle;

2. The correct name and address, the name of the city, county and state in which the person in whose name the vehicle is to be registered resides, the driver license number of the owner if the owner has a driver license or the Federal Employers Identification Number of the owner if such owner is not an individual, and such other information as may be prescribed by the Commission; and

3. a. The name of the carrier of the owner's insurance policy for such vehicle,

b. The policy number of the owner's policy for such vehicle, if available, or the name of the agent or office where the existence of security may be verified, if other than the carrier, [and]

c. The effective dates of the owner's policy for such vehicle, ....

*Id.* (Emphasis added.)

¶ 22 In this respect, we agree with the Court of Civil Appeals' holding in *Pollard* that § 7–601 imposes "a non-delegable duty on the 'owner' or 'operator' of a registered and nonexempt vehicle to maintain liability insurance coverage on that vehicle." 1991 OK CIV APP 107, ¶ 6, 819 P.2d at 721. As we read the plain language of § 1112, Oklahoma law requires the *owner* of a motor vehicle *to produce proof of compulsory liability insurance to a motor license agent when applying for registration* of the vehicle in this state. Under § 1112, the production of proof of compulsory liability insurance is a *condition to the owner's application for registration*, and the *motor license agent* is responsible for assuring the application for registration contains a proper description of the vehicle, the correct name and address of the owner/applicant for registration, as well as "[t]he name of the carrier of the owner's insurance policy for such vehicle, [t]he policy number of the owner's policy for such vehicle, if available, ... [and] [t]he effective dates of the owner's policy processing the application," and, under 47 O.S. § 1113(A), a completed application for registration and payment of the statutory fees is required before the owner is issued a certificate of registration and license tag by the Oklahoma Tax Commission. We hold Oklahoma law imposes no statutory duty on the dealer of automobiles to ascertain that the buyer of a motor vehicle possesses the compulsory liability insurance.

¶ 23 Given this statutory regime requiring production of proof of compulsory

---

comprehensive, expeditious and equitable No-fault insurance coverage required of all motorists. [The dealer] owed Lyngarkos a duty to make certain that [the buyer] possessed the insurance prior to issuing [the buyer] a temporary registration card and plate." (Citations omitted.)

7. "... It shall be the responsibility of the selling dealer to place a temporary license plate, in size similar to the permanent Oklahoma license plate but of a weatherproof plastic-impregnated substance approved by the Used Motor Vehicle and Parts Commission, upon a used motor vehicle,

travel trailer or commercial trailer when a transaction is completed for the sale of said vehicle...."

8. "... It shall be the responsibility of the selling dealer to place a temporary license plate, in size similar to the permanent Oklahoma license plate but of a weatherproof plastic-impregnated substance approved by the Oklahoma Motor Vehicle Commission, upon a new motor vehicle, travel trailer or commercial trailer when a transaction is completed for the sale of said vehicle or trailer...."

liability insurance to a *motor license agent as a condition to the registration* of a motor vehicle for use in this state, we cannot say a dealer of automobiles should be charged with a common law duty to require proof of compulsory liability insurance from a buyer before attaching a temporary tag to the purchased vehicle. The owner's production of proof of compulsory liability insurance *to a motor license agent* is part of the *statutory vehicle registration process required of the owner*, but a dealer of automobiles exercises no responsibility for registration of a vehicle sold to its buyer. Sections 1137.1 and 1137.3 of title 47, O.S., *require* an automobile dealer to afix a temporary tag to a new or used vehicle "when a transaction is completed for the sale of said vehicle," and those sections *do not grant* an automobile dealer *any authority to refuse to attach such a temporary tag* on the basis of whether the buyer has or has not obtained compulsory liability coverage on the purchased vehicle. Under these circumstances, and in our opinion, the imposition of a common law duty on the dealer of automobiles to require the buyer's production of proof of compulsory liability insurance before attaching a temporary license tag constitutes an extension of the protection of the Oklahoma compulsory liability insurance law beyond reason and common sense. *Lowery*, 2007 OK 38, ¶ 14, 160 P.3d at 965.

¶ 24 We consequently hold the trial court did not err as a matter of law or fact in granting the motions for summary judgment of Defendants, and did not abuse its discretion in denying Plaintiff's motion to reconsider. The order of the trial court is AFFIRMED.

MITCHELL, P.J., and HETHERINGTON, C.J., concur.